**Aybike KORTAN, Plaintiff,**

v.

**STATE OF CALIFORNIA, Defendant.**

**No. CV 96–8518–ER.**

United States District Court,
C.D. California.

May 7, 1998.

846

Thomas L. Gayton, Leslie A. Braun, San Diego, CA, for Plaintiff.

Daniel E. Lungren, Attorney General, Martin H. Milas, Senior Assistant Attorney General, Silvia M. Diaz, Supervising Deputy Attorney General, David M. Tiede, Deputy Attorney General, San Diego, CA, for Defendant.

## MEMORANDUM OPINION AND ORDER

RAFEEDIE, Senior District Judge.

On April 6, 1998, defendant State of California's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment came on for hearing before the Honorable Edward Rafeedie in Courtroom 1. The Court has read and considered the papers filed in connection with this matter and, having considered the oral argument of counsel, now HEREBY GRANTS the motion in its entirety for the reasons set forth below.

### I. Background

Plaintiff Aybike Kortan's Second Amended Complaint raises four causes of action under Title VII, 42 U.S.C. § 2000e *et seq.:* racial harassment under a hostile work environment theory, sexual harassment under a hostile work environment theory, disparate treatment because of gender, and retaliation.

Kortan is a caucasian female whose former employer is the State of California Department of Youth Authority (hereinafter Youth Authority). Kortan was employed by the Youth Authority as a clinical psychologist from 1988 to October 1994; it appears from the record that she is currently on disability leave.

During Kortan's tenure at the Youth Authority, she served, from time to time, as the "acting senior psychologist" during her im-

mediate supervisor Dr. Albert Atesalp's absences. But after experiencing some problems with the staff, Kortan soon ·became disenchanted with the added responsibility. On February 3, 1994, Kortan sent a memorandum to Atesalp in which she wrote that she no longer wanted to act in this capacity.

Later that day, Atesalp received the memorandum and called Kortan into his office for coffee. During conversation, Atesalp referred to the superintendent of the Ventura facility of the Youth Authority, Vivian Crawford, as a "regina," and said that Crawford "laughs like a hyena." In the same conversation, Atesalp referred to Theresa Chavira, another employee at the Youth Authority, as a "madonna," "regina," and "castrating bitch." He also allegedly referred to women generally as "bitches" and "histrionics [sic]." It is undisputed that none of these comments was expressly directed at Kortan.

Shortly thereafter, at some other time in February, but at a date unspecified, Atesalp, referring to an African–American male who had just arrived in a Lexus automobile, asked Kortan, "How does this black ape afford to buy such a car?" At another date unspecified, Atesalp called an African–American ward a "black goon" in Kortan's pres-ence.

Kortan complained about these remarks to assistant superintendent I.R. Schulman and superintendent Manual Carbajal in a February 10, 1994 memorandum. Schulman immediately encouraged her to pursue her allegations and assured her that there was a policy against retaliation. The matter was forwarded to headquarters. Brian Rivera of internal affairs conducted numerous interviews of persons at the facility, including two interviews of Kortan, but he was unable to obtain independent evidence sustaining the allegations.

Kortan claims that the following events occurred to her in retaliation for her February 10, 1994 grievance: (1) Atesalp laughed outside her door and said, "She got me on sexual harassment charges"; (2) Schulman gave her a lower performance rating than she was accustomed to receiving in three areas—work· habits, relationships with people, and meeting work· commitments; [1] (3) Schulman denied her request for a change of supervisor; (4) Crawford denied her request for a temporary transfer to the Ventura facility; and (5) Schulman denied her access to internal affairs ,investigation files regarding her grievance.

Kortan brought a charge with the Equal Employment Opportunity Commission in October 1994, received a right to sue letter in September 1996, and timely filed a complaint with this Court in December 1996. The defendant's motion for summary judgment is ready for disposition.

## II. Applicable Summary Judgment Standard

The rules set forth herein pertain to where, as here, the moving party seeks judgment on claims to which the opposing party bears the burden of proof at trial.

Federal Rule of Civil Procedure 56(c) provides in relevant part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The moving party has the initial burden of identifying those portions of the record—*e.g.,* the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex Corp. v. Catrett,* 477 U.S.· 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)—which the movant believes ·demonstrate the absence of a fact or facts necessary for at least one essential element of each cause of action upon which the moving party seeks judgment. *See id.; Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To sustain this burden, the movant ·need not produce affirmative evidence

---

1. She received "meets expected standards" marks in each of the three categories, rather than the "exceeds expected standards" she was used to receiving.

disproving the opposing party's claim, although doing so would certainly suffice. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *Bhan v. NME Hosp., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). But the moving party may not simply arrogate in its legal memoranda that the opposing party "has no evidence to prove his case" or that "there are no genuine issues of material fact." *See Celotex,* 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring). Thus, our local rules require the moving party to set forth in a "Statement of Uncontroverted Facts and Conclusions of Law" the "material facts as to which the moving party contends there is no genuine issue." C.D.Cal. Rule 7.14.1. To the extent the movant fails to satisfy its initial burden, summary judgment must be denied.[2] *See Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949–50 (9th Cir. 1993).

The opposing party should then designate specific facts, drawn from the materials on file, which show that there is an issue for trial on the essential elements that have been properly contested. *See* Fed.R.Civ.P. 56(e). The opponent must go beyond the pleadings, *see Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, and do more than make "conclusory allegations [in] an affidavit," *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *United States v. Various Slot Machines on Guam,* 658 F.2d 697, 700 (9th Cir.1981), or merely attack the credibility of the moving party's affiants, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Bare assertions in legal memoranda, unsupported by references to the record, are also insufficient. *See S.A. Empresa, Etc. v. Walter Kidde & Co., Inc.,* 690 F.2d 1235, 1238 (9th Cir.1982). Under our local rules, the opposing party must,

in a separate document entitled the "Statement of Genuine Issues," set forth "all material facts as to which it is contended there exists a genuine issue necessary to be litigated."[3] C.D.Cal. Rule 7.14.2.

The Court must resolve any controverted factual issues in favor of the party opposing the motion, *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), but need not presume that general averments embrace the specific facts necessary to sustain a claim, *see Lujan,* 497 U.S. at 888–89, 110 S.Ct. at 3188–89. The Court will assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 507 (9th Cir.1992). But where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511; *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 631–32 (9th Cir.1987).

Ultimately, the Court must ascertain whether the specific facts presented by the opposing party, if any, coupled with the undisputed background and salient facts, entitle the moving party to judgment as a matter of law. *See T.W. Electrical,* 809 F.2d at 631 & n.3. Where in light of the standard of proof required the record taken as a whole could not lead a rational trier of fact to find for the opposing party on the claims at issue, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 249–55, 106 S.Ct. at 2511–13, summary judgment is proper, *see Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### III. Evidentiary Issues

The Court first considers the evidentiary objections. Only the defendant has filed objections. *See* C.D.Cal. Rule 9.4.9.

---

2. The Court may nevertheless proceed with an element or claim not designated by the moving party, provided the party opposing the motion has had adequate notice and opportunity to present evidence pertaining to that element or claim. *See Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554 (discussing *sua sponte* summary judgment); *O'Keefe v. Van Boening,* 82 F.3d 322, 324 (9th Cir.1996) (same).

3. "The Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' *and* (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D.Cal. Rule 7.14.3. (emphasis added).

■] To meet the requirements of Rule 56, documents must "be authenticated by affidavits or·declarations of persons with personal knowledge through whom they could be introduced at trial." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). A document which lacks a proper foundation to authenticate it cannot be considered. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir.1989).

■] In an effort to substantiate her claim of psychological injury, Kortan has attached to her declaration a letter from a clinical psychiatrist. *See Kortan Declaration* Exh. E. The letter is addressed solely to Kortan's counsel, and the plaintiff herself cannot attest to its authenticity. The fact that·Exhibit E was produced from the plaintiff's own files does not insulate her from the authentication requirement. *See Flaherty v. Coughlin*, 713 F.2d 10, 14 (2d Cir.1983). Clearly, the proper approach would have been for counsel or the treating physician to have submitted a declaration authenticating the letter. This was not done.

■ Paragraph 17 of Kortan's declaration, which purports to relay the opinions of other health professionals, is inadmissible hearsay.[4] *See Kim v. United States*, 121 F.3d 1269, 1276–77 (9th Cir.1997).

■ The Court has also not considered any evidence of alleged racial or sexual epithets occurring four to five months prior to February 2, 1994. *See Plaintiff's Memorandum of Points & Authorities in Opposition to Motion for Summary Judgment* 8:25–28, 9:1–28, 10:1–10 & 16–20, 11:9–21 (raising prior conduct in an attempt to demonstrate pervasive harassment). These allegations were not mentioned in any of the complaints filed with this Court or, more importantly, in Kortan's charge with the California Department of Fair Employment and Housing.[5] A district court only has subject matter jurisdiction over allegations that either "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994); *see also Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973).

Kortan's charge of harassment states: "Starting February 2, 1994, my supervisor, Doctor Atesalp, created a hostile work environment by using racist and sexist terminology in my presence." *Kortan Deposition* Vol. I, Exh. 3 (erroneously tabbed as Exh. 5).[6] Because the plaintiff expressly limited the incidents in the charge to those occurring after February 1994, the EEOC had no reason to investigate conduct occurring four to five months prior.

## IV. Analysis

The Court has discerned the following claims from the Second Amended Complaint, all arising under Title VII, 42 U.S.C. § 2000e *et seq.*: (1) racial harassment under a hostile work environment theory, (2) sexual harassment under a hostile work environment theory, (3) disparate treatment because of gender, and (4) retaliation. Each claim is addressed in turn.

### A. Racial and Sexual Harassment Under a Hostile Work Environment Theory

Title VII of the Civil Rights Act of 1964 provides in pertinent part that "[i]t shall be

---

**4.** Paragraph 17 provides in pertinent part: "Three highly respected forensic mental health professionals ... have diagnosed my condition as 'post-traumatic stress disorder.' ... They agree that my psychological injuries are 'resulting from [my] experiences with Dr. Atesalp and others at the California Youth Authority.'" *Kortan Declaration* ¶ 17.

**5.** The charge was later forwarded to the Equal Employment Opportunity Commission.

**6.** The charge alleges continuing harassment from February 3, 1994 to October 31, 1994. *See Kortan Deposition* Vol. I, Exh. 3 (erroneously tabbed as Exh. 5). Moreover, Kortan testified that "I was never harassed by him until I wrote my—it was, I believe, February 3rd document," *id.* at 32:12–17, and that prior to February 1994, "Atesalp was, in my presence, a perfect gentleman,"*id.* at 125:8–15. *See also Plaintiff's Memorandum of Points & Authorities in Opposition to Motion for Summary Judgment* 15:17–19 ("Before Plaintiff wrote the February 3, 1994 and February 10, 1994 memoranda, Dr. Atesalp treated Plaintiff well.")

an unlawful employment practice for an employer ... to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

■ To succeed on a racial or sexual harassment hostile environment claim, a female caucasian plaintiff must prove each of the following by a preponderance of the evidence: (1) she was subjected to verbal or physical conduct that actually constituted discrimination because of her race or sex; (2) she subjectively did, and a reasonable caucasian woman would, consider this conduct unwelcome; (3) she subjectively did, and a reasonable caucasian woman would, find the conduct sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (4) once the defendant was apprised of the conduct, either actually or constructively, the defendant failed to take adequate remedial and disciplinary action. *See Oncale v. Sundowner Offshore Serv. Inc.,* — U.S. —, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998); *Harris v. Forklift,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Mockler v. Multnomah County,* 140 F.3d 808, 812 (9th Cir. 1998); *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995).

## 1. Racial Harassment

On the racial harassment claim, the defendant challenges Kortan's ability to present evidence by which a rational jury could find that Atesalp's racial slurs were made *because of* the plaintiff's race.

■ The Supreme Court recently stressed the language emphasized above, noting that harassment must come because of the plaintiff's protected characteristic. *See Oncale,* — U.S. at —, 118 S.Ct. at 1001–03; *see also Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 751–52 (4th Cir. 1996), *cert. denied,* — U.S. —, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

The defendant has identified those portions of the record which indicate that Atesalp's comments "black goon" and "black ape" were directed solely at African–American bystanders and were not made because of *Kortan's* race. That is to say, they were not made because the plaintiff is caucasian.[7] *See Statement of Uncontroverted Facts and Conclusions of Law* ¶¶ 19, 21 (hereinafter *SUFCL*). Kortan has entirely failed to identify any evidence to the contrary. Insensitive and boorish remarks not motivated by the plaintiff's race are not actionable under Title VII. No rational trier of fact could find for Kortan on this element and so the claim for racial harassment cannot go forward.

## 2. Sexual Harassment

Of the defendant's several challenges to Kortan's claim of sexual harassment, the defendant's argument that no rational jury could find a severe or pervasive hostile work environment has merit.

■ To be actionable harassment, a reasonable woman must find the conduct sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. *See Harris,* 510 U.S. at 21–22, 114 S.Ct. at 370; *Ellison v. Brady,* 924 F.2d 872, 879 (9th Cir.1991). But in most cases, neither single, isolated incidents of harassment, *see Carter v. Ball,* 33 F.3d 450, 461 (4th Cir.1994); *Ellison,* 924 F.2d at 878; *Clayton v. White Hall Sch. Dist.,* 875 F.2d 676, 680 (8th Cir.1989), nor "mere utterance of an ... epithet which engenders offensive feelings in an employee" are cognizable, *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *see alsoBaskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430–31 (7th Cir.1995).

The defendant has identified evidence in the record which indicates that Atesalp's comments regarding women occurred in a single conversation on February 3, 1994, *see SUFCL* ¶¶ 11–13, 15, in which it is undisputed that Atesalp never expressly directed a sexual insult at Kortan, *see Statement of*

---

**7.** The Court is not blind to the fact that Atesalp probably would not have made these comments in Kortan's presence had she been African–American, but this likely is not what Congress had in mind when it required the discrimination to occur "because of" the plaintiff's race.

*Genuine Issues* ¶ 18 (hereinafter *SGI*), and it is undisputed that the most severe comments made regarding other women were "bitch," "regina," "madonna," and "histrionics [sic]," *see id.* ¶¶ 11, 13, 15–17.

Perhaps noting that a single incident of such a nature is insufficient, Kortan has attempted to introduce evidence of previous instances (several months prior to February 1994) where Atesalp allegedly referred to other women in a similar manner while in Kortan's presence. Because these incidents fall outside the scope of her Second Amended Complaint and charge with the EEOC, this alleged conduct was not considered. *See supra* Part III.

■ Kortan also raises the incidents of racial slurs as support for her claim that the harassment was pervasive and severe. The Court has already concluded that these racial comments are not actionable. *See supra* Part IV.A.1. And in any event, the slurs cannot be the basis for establishing a genuine issue for trial on this sexual harassment claim.

■ Kortan also submits that the harassment was so severe that she suffered physical and psychological injury. For the reasons stated *supra* in Part III, most of the evidence offered in support of this claim, *see Kortan Declaration* Exh. E & ¶ 17, is inadmissible. Paragraph 16 of the plaintiff's self-serving declaration, standing alone, is insufficient to create a genuine issue for trial. The standard here is objective, and Kortan has presented no evidence that a reasonable woman would have reacted in the same way. The "effect on the employee's psychological well-being is ... [only] relevant to determining whether the plaintiff *actually* found the environment abusive." *Harris,* 510 U.S. at 23, 114 S.Ct. at 371 (emphasis added); *see also Ellison,* 924 F.2d at 879 (the objective standard "shields employers from having to accommodate the idiosyncratic concerns of the rare hypersensitive employee").

During oral argument, counsel argued several times that the Court must infer that the word "regina" (perhaps intended to mean "vagina") in the presence of a woman is "tantamount to the use of the word nigger in the presence of a black person and that is how [Kortan] perceived it." Such an inference is wholly unreasonable and merits no further discussion.

In sum, the only competent evidence of sexual harassment is the conversation Kortan had with Atesalp on February 3, 1994. Given the lack of frequency and severity of the comments, the Court must conclude that no rational juror could find that a reasonable woman would consider the conduct so severe and pervasive so as to create a sexually-based hostile work environment. Kortan's sexual harassment claim cannot go forward.

## B. Disparate Treatment and Retaliation

■ Disparate treatment and retaliation claims use the same burden–shifting analysis. *See Lam v. University of Hawai'i,* 40 F.3d 1551, 1559 n.11 (9th Cir.1994).

> The plaintiff must first establish a *prima facie* case .... If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Lowe v. City of Monrovia,* 775 F.2d 998, 1004–05 (9th Cir.1985).

To establish a *prima facie* case of disparate treatment or retaliation, a plaintiff must produce evidence that gives rise to an inference of unlawful discrimination. *See id.* at 1005. The *"prima facie* case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), or by more direct evidence of discriminatory intent." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 891 (9th Cir.1994). The distinction matters because it affects how summary judgment motions are handled.

A presumption of disparate treatment arises when a plaintiff demonstrates that: (1) she belongs to a protected class of persons; (2) she applied and was qualified for a position for which the employer was seeking

applicants; (3) despite being qualified, she was rejected (the adverse employment action); and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of comparable qualifications.[8] *See McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824.

A presumption of retaliation arises when a plaintiff demonstrates that: (1) she engaged in a protected activity; (2) the employer subjected her to adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Wallis*, 26 F.3d at 891.

If the presumption approach is used, then after the defendant proffers a legitimate, nondiscriminatory reason, the plaintiff must produce "specific, substantive evidence of pretext" to avoid summary judgment. *Id.* at 890–91; *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997). This follows because the *McDonnell Douglas* presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Although the burden here is not onerous, *see Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996), the plaintiff must at least give some indication that the proffered "reason was false [and] that discrimination was the real reason," *St. Mary's Honor*, 509 U.S. at 515, 113 S.Ct. at 2752.

But if a plaintiff initially presents evidence beyond the minimum necessary to raise the presumption, *e.g.*, direct evidence of discriminatory intent, then the plaintiff need not present additional evidence of pretext to avoid summary judgment. *See Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir.1991); *Wallis*, 26 F.3d at 889–90.

### 1. Disparate Treatment Because of Gender

The defendant first challenges Kortan's ability to prove that Atesalp and others subjected her to disparate treatment.

The defendant has met its burden of identifying portions of the record which indicate that no adverse employment action was taken against Kortan and that, in the alternative, it had legitimate, nondiscriminatory reasons for making any employment decision. *See SUFCL* ¶¶ 31–34, 37–39, 49–52, 55, 78–81, 87.

Kortan has failed to identify any evidence to the contrary. In fact, it appears from the plaintiff's opposition that Kortan has abandoned the disparate treatment claim altogether. The theory is completely ignored. The reason, the Court suspects, is because the plaintiff has incorrectly assumed that a disparate treatment claim and a sexual harassment hostile environment claim are one and the same—they are not. *See Sischo–Nownejad*, 934 F.2d at 1109 & n.6. Kortan cannot simply rely on the latter to support the former. Because Kortan has failed to designate specific facts showing that there is a genuine issue for trial on the disparate treatment claim, this claim also may not proceed to trial.

### 2. Retaliation

The defendant next challenges Kortan's final claim: that members of the Youth Authority retaliated against her in violation of Title VII, 42 U.S.C. § 2000e–3(a).

According to the pleadings, after Kortan complained on February 10, 1994 about Atesalp's conduct, the following happened (which Kortan contends are adverse employment actions): (1) Atesalp laughed outside her door and said, "She got me on sexual harassment charges"; (2) Schulman gave her a lower performance rating than she was accustomed to receiving in three areas—work habits, relationships with people, and meeting work commitments; (3) Schulman denied her request for a change of supervisor; (4) Crawford denied her request for a temporary transfer to the Ventura facility; and (5) Schulman denied her access to internal affairs investigation files that pertained to her complaint.

8. The elements of this presumption have been treated with some flexibility. *See, e.g., Sengupta*

### a. *Prima Facie* Case

The defendant does not dispute that Kortan has established the first and third elements of a retaliation *prima facie* case. Instead, the defendant argues that not one of the acts noted above constitutes an actionable adverse employment action.

] Not all conduct that occurs following a protected activity is actionable under Title VII. "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir.1995). Ultimate employment decisions include acts such as "hiring, granting leave, discharging, promoting, and compensating." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997); *see also Messer v. Meno*, 130 F.3d 130, 140 (5th Cir.1997).

Atesalp's comment, "She got me on sexual harassment charges," falls well below the level necessary to establish an adverse employment action. "Hostility from fellow employees ... [is] not [an] adverse employment action[ ]." *Mattern*, 104 F.3d at 707. To hold otherwise would be to "transform Title VII into a general civility code for the American workplace." *Oncale*, —— U.S. at ——, 118 S.Ct. at 1002.

Even Kortan's lower performance evaluation does not constitute an adverse employment action. A negative evaluation alone, without any concomitant adverse impact, such as a demotion or a change of responsibilities, is not cognizable. *See Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir.1994). "Because this evaluation [of "meets expectations"] was never used as any basis for any action against [the plaintiff], it cannot fairly be considered an adverse employment action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997).

*v. Morrison–Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir.1986).

The remaining three employment actions are also not actionable under Title VII. Such refusals did not place the plaintiff in a worse position, give her additional, fewer or different responsibilities, *see Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 n.6 (9th Cir.1994), *cert. denied*, 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995), or result in a loss of salary or benefits, *see Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987). Rather, the defendant's employment decisions demonstrate, at most, "insufficient *remediation*." *Steiner*, 25 F.3d at 1465 (emphasis in original).

Because the events following Kortan's grievance do not constitute "adverse employment actions," as that term is defined by the case law, the retaliation claim cannot go forward.

### b. Legitimate, Nondiscriminatory Reasons

The defendant submits, in the alternative, that it has legitimate, nondiscriminatory reasons for making these employment decisions,[9] and that no rational juror could find that these reasons were merely a pretext to conceal discrimination. This argument also has merit.

 The defendant has identified portions of the record which indicate that the lower evaluation was proper. With respect to the "relationships with people" evaluation, evidence indicates that Schulman gave her a "meets expectations" instead of an "exceeds expectations" rating because maintenance staff had complained that Kortan had treated them in an unprofessional manner. *See SUFCL* ¶ 38. And with respect to "work habits" and "meeting work commitments," the defendant has pointed to evidence which establishes that Schulman rated Kortan with a "meets expectations" rating because the plaintiff had been on vacation and leave for much of the review period; Schulman felt he did not have enough information to give her the highest rating, "exceeds expectations." *See id.* ¶ 39.

**9.** The defendant does not attempt to offer any reason for Atesalp's comment, "She got me on sexual harassment charges."

 Furthermore, the defendant has submitted evidence which indicates that its denial of Kortan's request for a change of supervisor was legitimate. It is undisputed that there were no other supervisors (other than Atesalp) within the plaintiff's program, *see SGI* ¶ 31, and that to move the plaintiff to another program, the Marshall program, was implausible. The Marshall program was fully staffed. To accommodate Kortan would have required the defendant to displace or remove another employee from the Marshall program, *see SGI* ¶ 33—an act which might have generated its own complaints.

The defendant has also submitted evidence which indicates that it denied the transfer to the Ventura facility for legitimate, nondiscriminatory reasons. It is undisputed that the Ventura facility had no openings, *see id.* ¶ 52, that Kortan's current supervisors had no authority to approve the transfer, and that only the superintendent at the receiving facility had discretion to permit such a transfer, *see id.* ¶ 50. The superintendent in Ventura, Vivian Crawford, a person whom Kortan does not accuse of engaging in discrimination, denied the request. Kortan's supervisors took no part in the decision.

Finally, the defendant has identified those portions of the record which indicate that it refused to provide the records of the internal investigation because it is against agency policy to do so. *See SUFCL* ¶ 87.

### c. Pretext

The competent evidence presented by the plaintiff in this case does not consist of more than the *McDonnell Douglas* presumption. Thus the plaintiff must produce "specific, substantive evidence of pretext" to avoid summary judgment. *See Wallis,* 26 F.3d at 890. Choosing instead to rest on her laurels, Kortan has produced no additional evidence to show that any one of these proffered reasons was merely pretextual. On the record before the Court, no rational juror could find for the plaintiff on the retaliation claim.

### V. Order

The Court GRANTS the defendant's motion in its entirety.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by telefax or by United States mail, copies of this Memorandum Opinion and Order on counsel for the parties in this matter.