**Barbara VON GUNTEN, Plaintiff,**

v.

**State of Maryland, MARYLAND DEPARTMENT of the ENVIRONMENT, Defendant.**

**No. H–98–3883.**

United States District Court, D. Maryland.

Sept. 20, 1999.

Neil L. Henrichsen, Joanna R. Onorato and Mittendorf, Henrichsen & Stewart, P.L.L.C., Washington, D.C., for plaintiff.

Kenneth W. Long, Jr., Assistant Attorney General, Maryland, for defendant.

### *MEMORANDUM AND ORDER*

ALEXANDER HARVEY, II, Senior District Judge.

Plaintiff Barbara von Gunten ("von Gunten") was formerly employed by the Maryland Department of the Environment ("MDE"). In this civil action, she has sued the MDE under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Compensatory damages, back pay, front pay and other relief are here sought by the plaintiff.

Pursuant to a Scheduling Order entered by the Court, the parties have engaged in extensive discovery. Pending before the Court is a motion for summary judgment filed by defendant MDE. The parties have submitted lengthy memoranda and voluminous exhibits in support of and in opposition to the pending motion, including excerpts from depositions taken

during discovery. A hearing on the pending motion has been held in open court. For the reasons to be stated herein, defendant's motion for summary judgment will be granted in part and denied in part.

I

*Background Facts*

In December of 1995, plaintiff was employed by the MDE as an Environmental Health Aide III, a position in its Technical and Regulatory Services Administration ("TARSA"). She was assigned to work in the Shellfish Monitoring Section. Her duties included collecting by boat various samples from shellfish produced in areas of the Chesapeake Bay and working on land investigating potential shoreline sources of pollution.[1] Ordinarily, the shoreline work was performed individually, and the boat work was performed by a team of two persons.

Plaintiff, who had no significant experience in the operation of a boat before being hired by the MDE, was assigned to work on a boat with Vernon Burch ("Burch"), a seasoned veteran with over twenty years experience. Burch was assigned as the team leader and captain of the boat, and both von Gunten and Burch reported to their supervisor, William Beatty ("Beatty"). The boats used by the MDE were small, open boats which required the two employees on board to work in close proximity. The boats had no toilet facilities, and plaintiff understood when she was hired that an MDE employee working on these boats might occasionally be required to urinate off the side of the boat.

Almost immediately after she began working with him in June of 1996, Burch began making crude, sexual comments and engaged in unwanted touching of plaintiff in various places. According to plaintiff,

uninvited sexually offensive comments were constantly made by Burch.

On July 31, 1996, plaintiff was knocked off her seat and injured when the boat, piloted by Burch, hit a boat wake. The next day, on August 1, 1996, she telephoned Beatty, her immediate supervisor, reported that she had been injured and complained that Burch was sexually harassing her. Beatty in turn contacted John Steinfort ("Steinfort"), his supervisor, who was Chief of the Compliance Monitoring Division of the MDE. A meeting was arranged with von Gunten, Burch, Beatty and Steinfort in attendance. At the meeting, plaintiff outlined the instances of the alleged sexual harassment to which she had been subjected and stated that she wanted the crude comments, verbal innuendos and unwelcome touchings to stop immediately. Burch denied that he had done anything improper. Both employees were given copies of the State of Maryland's policy on sexual harassment.

According to plaintiff, the sexual harassment did not stop after this meeting but rather changed forms. Plaintiff states that Burch began urinating frequently from the boat while making inappropriate comments and that he often would touch his crotch area and engage in suggested sexual self stimulation. From September through November of 1996, plaintiff reported Burch's unwelcome behavior to Beatty nearly every time that she visited the field office. She complained of Burch's exhibitionist tendencies and claimed that he was refusing to properly train her.

Another meeting was held on November 19, 1996, with von Gunten, Burch, Beatty and Steinfort in attendance. Beatty's notes indicate that he believed that most if not all of the conduct described by von Gunten fell outside of Maryland personnel regulations covering employee conduct. Plaintiff von Gunten was instructed at the

---

1. Shoreline testing was generally done during the winter and spring months when boat work became difficult.

meeting "to do whatever your field supervisor tells you to do."

According to plaintiff, Burch's inappropriate, sexual harassment continued even after the November 19 meeting and included aggressive physical conduct. On December 11, 1996, he struck her on the buttocks with a wooden oar. According to Burch, this striking was inadvertent. After this incident, plaintiff tried unsuccessfully to contact Beatty. When she finally complained to Steinfort about the incident, he decided to split up the team and remove plaintiff from the boat. Plaintiff was assigned to do shoreline survey work, and Burch was allowed to complete the remaining one week portion of assigned boat work on his own.

On December 12, plaintiff advised Steinfort that she planned to contact MDE's Fair Practice Office and discuss her concerns relating to the sexual harassment which had occurred. Later that day, Steinfort contacted Stephen Bieber ("Bieber"), TARSA's Fair Practices Officer, and indicated that he did not believe that there was enough information to substantiate the claims of harassment made by von Gunten. On December 13, plaintiff requested assistance from Wallace Baker ("Baker") of MDE's Fair Practices Office. At Baker's request, Bieber undertook an investigation and concluded that although there was evidence to support von Gunten's claims of harassment, he did not believe that the harassment was sufficiently pervasive to satisfy the relevant Maryland legal test.

Plaintiff met with Steinfort on December 19, and was told that she could no longer use the State vehicle which she had been driving since she had started working for the MDE. Thereafter, plaintiff used her personal vehicle and was reimbursed for her expenses. In January of 1997, plaintiff was told that she would be required to provide documentation of prior sick leave absences. According to Steinfort, plaintiff called him on January 14, 1997 and threatened that he and Beatty could expect a visit from her boyfriend who would beat them to a pulp. Plaintiff denies that this call occurred. On February 14, 1997, plaintiff's annual performance evaluation was issued. It recommended that she be given the standard pay increase but indicated a general rating of "unsatisfactory."

On or about February 28, 1997, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), alleging sex discrimination and unlawful retaliation. On March 14, 1997, plaintiff was advised that she would not be going back to work on a boat in view of the circumstances involving Burch. When the boating season resumed in the spring of 1997, plaintiff was continued in a shoreline survey position, although Burch was returned to do boat work. Throughout the summer of 1997, defendant MDE attempted to obtain a position for plaintiff which would permit her to perform boat work. In August of 1997, a position was created which would allow her to perform boat work but would also require her to perform shoreline survey work for 40% of the time and to report directly to Beatty. Additional time would also have to be spent by plaintiff in the Annapolis Field Office where Beatty and Steinfort were located. Because of the requirements for this new position, plaintiff informed Michael Haire ("Haire"), Director of TARSA, that the position was unsuitable.

On October 19, 1997, plaintiff met with Baker and his assistant to discuss her claims of sexual harassment and retaliation. According to plaintiff, Baker told her that she was being irritating and that she should "stop bitching all the damn time." On November 12, 1997, plaintiff submitted a letter of resignation stating that Baker had refused to deal with her continuing concerns. Following receipt of a notice from the EEOC of her right to sue, plaintiff filed this civil action in this Court on November 25, 1998.

## II

### *Plaintiff's Claims*

Plaintiff's complaint contains two counts. She has first presented in Count I a claim of sex discrimination and sexual harassment under Title VII. In Count II, plaintiff alleges that defendant subjected her to unlawful retaliation in violation of Title VII. In both counts, she alleges that MDE's discriminatory behavior so infected the working environment and atmosphere at the MDE that she had no choice but to resign her position in order to avoid further sex discrimination and retaliation. As relief, plaintiff seeks compensatory damages, back pay, front pay, an order of this Court restoring her job, attorneys' fees and costs.

## III

### *Summary Judgment Principles*

The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. A party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Barwick,* 736 F.2d at 958. This burden is met by consideration of affidavits exhibits, depositions and other discovery materials. *Id.* Nevertheless, "[t]he facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1004–05 (4th Cir.1987), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985)).

Following its review of the extensive record developed in this case by the parties, this Court has concluded that defendant's motion for summary judgment must be granted in part and denied in part. The disputed issues that arise here under Count I cannot be resolved by way of defendant's pending motion for summary judgment. However, plaintiff's claim of unlawful retaliation alleged in Count II must fail as a matter of law. Furthermore, plaintiff has not shown that she was constructively discharged by defendant, and she will not be entitled to recover damages in this case resulting from the termination of her employment.

## IV

### *Sexual Harassment*

When a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex in violation of Title VII. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Unwelcome verbal or physical conduct of a sexual nature constitutes sexual harassment when such conduct has the effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. *Id.* at 65, 106 S.Ct. 2399.

To prove a claim of sexual harassment based on allegations that an employer's conduct has created a hostile or abusive work environment, a plaintiff must show (1) that the conduct in question was unwelcome; (2) that the harassment was based on the sex of the plaintiff; (3) that the harassment was sufficiently severe or

pervasive to alter the conditions of employment and create an abusive work environment; and (4) that some basis exists for imputing liability to the employer. *Spicer v. Virginia Dep't of Corrections,* 66 F.3d 705, 709–10 (4th Cir.1995); *Paroline v. Unisys Corp.,* 879 F.2d 100, 105 (4th Cir. 1989), *vacated in part on other grounds,* 900 F.2d 27 (1990) (*en banc*). In determining whether there is proof of an abusive working environment, a court must consider the totality of the circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In *Paroline,* the Fourth Circuit cautioned that whether harassment is sufficiently severe or pervasive is "quintessentially a question of fact." 879 F.2d at 105; *see also Beardsley v. Webb,* 30 F.3d 524, 530 (4th Cir.1994). Summary judgment is therefore inappropriate where, on the record before the court, reasonable minds could differ as to whether defendants' challenged conduct created a hostile atmosphere. *Paroline,* 879 F.2d at 105.

■ The record here discloses that on numerous occasions crude, sexual comments were directed to plaintiff by Burch while the two were on board MDE's boat performing duties assigned to them.[2] In addition, there were times when Burch engaged in unwanted touching. He would place his hand on hers, rub her arm, stroke her back and lean up against her, particularly when she was operating the boat. In each instance, plaintiff asked him what he was doing and told him that he had no reason to touch her. On one occasion, when Burch was instructing her in the tying of a particular type of knot, he crouched down close to her and put his inner thigh against her back. When she protested, he laughed and rubbed his leg up and down against her back. At her deposition, plaintiff testified that "Mr. Burch initially acted as though the State

had sent him a girlfriend. He couldn't keep his hands off me."

Plaintiff has also testified that Burch subjected her to repeated comments which were sexually offensive. When they were preparing to do shellfish sampling in an area where Burch had not traveled for several years, he remarked "I'm a virgin today so you'll have to take it easy on me." On another occasion when von Gunten turned her swivel seat around to face the sun, Burch, referring to a sexual position, asked her if she was "[t]ired of that old 69 stuff?" On one occasion when he was cold, Burch stepped close to plaintiff and stated, "I'll just grab you in a big bear hug to get warm." Plaintiff had previously worked as a massage therapist which Burch equated with prostitution and repeatedly made comments to that effect. On several occasions, Burch told plaintiff that he was not gay. The boat used by von Gunten and Burch for shellfish sampling was owned by the State and was kept at Burch's home because there was no State facility nearby. On occasion, plaintiff was required to do maintenance and cleaning work on the boat and on equipment at Burch's home. On more than one occasion, Burch handed her a plaque which he displayed in his kitchen and asked her what she thought of it. The plaque read: "National Sex Week—Those That Give At Work Will Not Have To Give At Home." According to plaintiff, she repeatedly protested Burch's comments and unwelcome touchings, but to no avail.

After von Gunten had complained about Burch's conduct at the meeting with Beatty, Steinfort and Burch held on August 2, 1996, his sexual harassment, although changing forms, did not cease. Whereas previously he had urinated from the boat only once or twice a week, he began urinating several times a day, often shortly after they left the dock in the morning.

**2.** Because plaintiff is the non-movant here, the facts summarized below, where disputed, reflect plaintiff's version of the events to the extent that it is supported by her affidavit, by depositions or by documentary evidence. *Magnuson v. Peak Technical Servs., Inc.,* 808 F.Supp. 500, 504 (E.D.Va.1992).

While urinating, he would speak to her or make inappropriate comments like "The sun feels good on it." Often he would urinate on one side of the boat, stop and then move to the other side. When she protested, he told her that if she had a problem with it she should look for another job. According to plaintiff, Burch would touch his crotch area frequently, groan and engage in actual or suggestive self stimulation. After the later meeting of November 19, 1996 attended by the same four individuals, Burch became aggressive in the conduct which he directed towards plaintiff. He threw fake punches at her and on December 11, 1996, struck her on the buttocks with a wooden oar. Although Burch claimed that the striking was inadvertent, von Gunten has testified that he had walked behind her, picked up the oar and struck her with it, standing there laughing after the incident.

When these and other incidents are viewed in a light favorable to plaintiff, this Court concludes that ample evidence has been produced by plaintiff to prove all of the elements of a claim of sexual harassment under Title VII. Defendant is not entitled to the entry of summary judgment in its favor on Count I of the complaint because on the record before the Court reasonable minds could differ as to whether Burch's conduct created a hostile and abusive workplace atmosphere in violation of Title VII. Whether evidence of record here supports plaintiff's claim or the defenses asserted depends "largely on the credibility of the witnesses and the inferences the jury [can] reasonably draw from the facts." *Beardsley,* 30 F.3d at 530.

In support of its motion seeking summary judgment as to Count I, defendant argues that the subject conduct was not sufficiently severe or pervasive to alter plaintiff's conditions of employment and create an abusive work environment. According to defendant, the comments were not severe enough to be objectively hostile and the unwelcome touchings were either isolated or not sexual. Finally, defendant contends that insofar as the urination incidents and the exposure of Burch's genitalia are concerned, these acts were not necessarily based on sex because plaintiff had the opportunity to look away but did not do so.

There is no merit to these contentions. The disputed facts cannot be decided in defendant's favor as a matter of law at this stage of the case. The incidents in question must be considered by the Court as a whole when evaluating a hostile work environment claim. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367. When the facts here and the inferences to be drawn from them are viewed in a light most favorable to plaintiff, the Court concludes that plaintiff has shown that she was subjected to nearly constant and unwelcome touching despite her repeated protestations. Since von Gunten and Burch were isolated together in a small boat, his conduct became all the more intimidating. When coupled with Burch's repeated touching of the plaintiff, his comments amount to more than mere teasing or workplace banter. Under the circumstances here, the statements in question have by implication a decidedly sexual bent to what otherwise might be construed as innocent workplace joking.

Defendant further argues that plaintiff has not satisfied the fourth element of the *Spicer* test by showing that Burch's actionable conduct was imputable to the MDE as her employer. The Court would disagree. Plaintiff has provided evidence indicating that although her employer attempted to deal with the problem by holding a meeting and distributing State guidelines to Burch, her supervisors stopped short of taking effectual steps to remedy the problem. Beatty and Steinfort not only left Burch and von Gunten together on the boat for several months after she first complained, but they also refused to take her later complaints seriously. It was not until December 12, 1996 that plaintiff was removed from the boat and assigned to do shoreline survey work.

The evidence in question indicates that defendant had actual knowledge of the harassing conduct but took no prompt and adequate remedial action. Under such circumstances, the workplace misconduct of Burch may be imputed to defendant MDE. *Spicer*, 66 F.3d at 710; *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983) (holding an employer liable on a hostile work environment claim where the employer did not take effective steps to end the harassment).[3]

For these reasons, this Court concludes that defendant MDE is not entitled to summary judgment as to Count I of the complaint.

## V

### Constructive Discharge

In her complaint, plaintiff has alleged that she had no choice but to resign her position in order to avoid further sex discrimination. She claims that the sexual harassment to which she was subjected caused her constant stress and that this stress ultimately forced her to resign from her job.

■ To prove constructive discharge, the plaintiff must show that defendant deliberately made her working conditions "intolerable" in an effort to induce her to quit. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353–54 (4th Cir.1995). She must prove two elements: (1) the "deliberateness" of defendant's actions; and (2) the "intolerability" of the working conditions. *Id.* at 1354.

■ On the record here, this Court concludes that plaintiff has not shown that her resignation on November 12, 1997 amounted to a constructive discharge. Her sexual harassment by Burch had long since ceased by the time plaintiff resigned. She had no further contact with Burch after she was removed from the boat on December 12, 1996. It was not until some eleven months later that she submitted her letter of resignation, and there is no indication that she was subjected to any sexual harassment by any representative of defendant during those eleven months. Neither Beatty nor Steinfort engaged in conduct amounting to sexual harassment. That she became frustrated because they did not address her complaints to her satisfaction does not constitute discrimination on the basis of her gender. A discriminatory animus cannot be inferred from the day-to-day conduct of supervisors which plaintiff may deem to be insufficient or inconsiderate. *Settle v. Baltimore County*, 34 F.Supp.2d 969, 991 (D.Md.1999). Not only did defendant remove her from any contact with Burch, but her supervisors even made arrangements for her to return to boat work in August of 1997. However, defendant's offer of this new position was rejected by plaintiff. Evidence does not exist indicating that defendant's failure to provide her with boat work during the spring and early summer of 1997 had anything to do with continuing sexual harassment.

Moreover, plaintiff has not shown that representatives of defendant MDE deliberately attempted to force her resignation. Not only was a new position created for her in August of 1997 so that she might have an opportunity to do boat work, but the MDE even offered, after receipt of her letter of resignation, to give her an unpaid leave of absence which would have preserved her eligibility for state employment and her status in the future. Plaintiff declined the offer. On the record here, plaintiff has not shown that her working conditions during the months before her resignation had been made intolerable by

---

**3.** In the alternative, defendant argues that it cannot be held liable for Burch's actions because he was not von Gunten's supervisor. There is a dispute of material fact as to whether Burch had sufficient authority to qualify as a supervisor. *See Grozdanich v. Leisure Hills Health Center*, 25 F.Supp.2d 953, 973 (D.Minn.1998). This issue cannot be decided as a matter of law on the present record.

defendant in a deliberate effort to induce her to quit.

For these reasons, plaintiff's claim of constructive discharge must fail. She will not therefore be permitted in this case to seek back pay, front pay, reinstatement to her former job or other compensatory damages based on her voluntary termination of her employment in November of 1997. Plaintiff may at the trial seek an award of emotional and other damages sustained by her as a result of the sexual harassment which occurred during the months when she worked on defendant's boat with Burch.

## VI

### Unlawful Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee because the employee has protested discrimination or filed charges of discrimination against the employer. *See* 42 U.S.C. § 2000e–3. In order to establish a claim of unlawful retaliation, the plaintiff must prove the following: "(1) that she engaged in a protected activity; (2) that the employer took adverse employment action against her; and (3) that a causal connection existed between the protected activity and the adverse action." *McNairn v. Sullivan* 929 F.2d 974, 980 (4th Cir.1991); *Settle*, 34 F.Supp.2d at 993.

Defendant concedes that plaintiff has satisfied the first and third prongs of the *McNairn* test. There is evidence in the case that plaintiff engaged in protected activity and that there was a causal connection between the protected activity and the conduct which plaintiff claims amounted under Title VII to adverse employment action. However, defendant contends that plaintiff has failed to satisfy the second prong because she cannot show that the Department took "adverse employment action" against her within the meaning of Title VII as that concept has been construed by decisions of the Fourth Circuit and this Court. In the alternative, defen-

dant asserts that there were legitimate, nondiscriminatory reasons for the actions complained of by plaintiff and that plaintiff cannot show that intentional discrimination, rather than defendant's proffered reasons was the true basis for the employment decision.

In *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986), the Fourth Circuit noted that "employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred." The leading Fourth Circuit case dealing with the requirements for determining under Title VII whether an employer has taken an "adverse employment action" against a plaintiff is *Page v. Bolger*, 645 F.2d 227 (4th Cir.1981). In *Page*, the Fourth Circuit held that a court, in determining whether there has been discrimination with respect to "personnel actions" taken by the defendant, should focus on the question whether there has been discrimination "in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating." *Id.* at 233. There are "many interlocutory or mediate decisions" which have no immediate effect upon employment conditions and which were not intended to fall within the proscriptions of Title VII. *Id.* In *Munday v. Waste Management of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir.1997), *cert. denied*, 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998), the Court stated:

> In no case in this circuit have we found an adverse employment action to encompass a [particular] situation ... without evidence that the terms, conditions or benefits of [plaintiff's] employment were adversely affected.

Applying the principles of the applicable Fourth Circuit cases to the facts of record here, this Court concludes that plaintiff has not produced evidence indicating that defendant took adverse employment action

against her after she engaged in protected activity. Plaintiff has submitted a laundry list of actions which were taken by her supervisors after she had complained of Burch's sexual harassment and which she claims were ultimate employment decisions under Title VII. She complains that her State vehicle was taken away from her, that her job assignment was downgraded when she was given full time shoreline work, that she was placed on administrative leave because of a citizen's complaint, that her sick leave was scrutinized more carefully than other employees, that her expense sheets were criticized, that defendant gave her an unsatisfactory performance rating, that she was not permitted in the field office without permission and that supervisors challenged her expense accounts. Neither singly nor in the aggregate do these events constitute ultimate employment decisions actionable under Title VII.

None of the occurrences relied upon by plaintiff can be characterized as ultimate employment decisions involving hiring, granting leave, discharging, promoting or compensating. *Page,* 645 F.2d at 233. The essential terms, conditions and benefits of plaintiff's employment were not adversely affected by actions taken by MDE after plaintiff engaged in protected activity. She remained at all times employed as an Environmental Health Aide III. Her compensation and benefits were not affected. Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action, even if the new job causes some modest stress not present in the old position. *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir.1999); *Caussade v. Brown,* 924 F.Supp. 693 (D.Md.1996) (citing *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994)); *see also Spring v.*

*Sheboygan Area School Dist.,* 865 F.2d 883, 885–86 (7th Cir.1989) (no adverse employment action where elementary school principal was transferred to a dual principalship over two elementary schools).

Plaintiff has argued that her job was "downgraded" when she was assigned to do shoreline work on a full time basis. However, a transfer of job assignments involving no reduction in pay and no more than a minor change in working conditions cannot rise to the level of a materially adverse employment action. *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996). Otherwise, "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* In reassigning plaintiff to do shoreline work, defendant MDE had granted her request that she be removed from her assignment to work with Burch because of his continuing sexual harassment.[4] For some three months each year, plaintiff had always been required to do shoreline work. When in August of 1997 MDE created a new position which would have allowed plaintiff to return to boat work, she refused to accept that assignment.

In *Lucas v. Cheney,* 821 F.Supp. 374, 376 (D.Md.1992), Judge Murray of this Court held that a verbal reprimand and a supervisor's use of menacing words in threatening the plaintiff did not constitute ultimate employment actions, even though the letter of reprimand came after the plaintiff had filed charges with the EEOC. Moreover, lowering of a performance rating or an unsatisfactory rating is not an adverse employment action. *Settle,* 34 F.Supp.2d at 1009–10. Rather, such an action is a mediate step, which, if relied upon for a true adverse employment decision like a discharge or a demotion, may become relevant evidence. *Id.* The general rating of "unsatisfactory" received by

---

**4.** There were no openings on other MDE boats at the time when plaintiff was removed

from the boat captained by Burch.

plaintiff in February of 1997 did not result in a decrease in her compensation, in her demotion or in her discharge. Indeed, the recommendation was made at the time that she receive a standard pay increase.

Her State vehicle was taken from her in November of 1996 when Haire, the MDE Director of TARSA, ordered that a four wheel drive vehicle be reassigned to the Baltimore office from the Annapolis field office. Plaintiff's vehicle was chosen based on the miles driven and the locations of the areas involved. She thereafter used her personal vehicle and was reimbursed for her mileage. In early June of 1997, she was once again given a State vehicle.

Plaintiff was disciplined in January of 1997 when the Annapolis field office received a complaint from homeowners that she had entered their property under false pretenses. Mr. and Mrs. Elliott, the homeowners, had complained that von Gunten had lied to their housekeeper to gain entry into their residence to perform a dye trace. Beatty was able to dissuade the Elliotts from filing criminal charges by assuring them that the MDE would take appropriate action against plaintiff. Although plaintiff was temporarily placed on administrative leave, there was no loss in pay.[5]

Plaintiff also complains that her supervisors overly scrutinized her applications for sick leave. But this occurred because between January and March of 1997 plaintiff was taking a large amount of sick leave in a short period of time. In later months, her use of sick leave decreased substantially.

Many of plaintiff's complaints, characterized by her as adverse employment actions, "can be attributed to an increase of predictable tension in an office after a discrimination charge has been filed." *Raley v. Board of St. Mary's County Commissioners*, 752 F.Supp. 1272, 1281 (D.Md. 1990). Claims of this sort do not amount

to adverse employment action. *Id.* at 1281 (citing *Geisler v. Folsom*, 735 F.2d 991, 994 (6th Cir.1984)). "Title VII does not prohibit all verbal or physical harassment in the workplace, ..." *Oncale v. Sundowner Offshore Services, Incorporated*, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Careful attention must be given by a court to the requirements of Title VII to avoid the risk of transforming the statute into "a general civility code for the American workplace." *Id.* Hostility directed at a plaintiff from supervisors or fellow employees does not therefore amount to adverse employment action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997); *Kortan v. State of California*, 5 F.Supp.2d 843, 853 (C.D.Cal.1998).

On the record here, this Court has concluded that plaintiff has not produced evidence establishing that defendant MDE took adverse employment action against her after she engaged in protected activity. She therefore cannot proceed to trial in this case on her claim of unlawful retaliation asserted under Title VII. Accordingly, defendant's motion for summary judgment will be granted as to Count II of the complaint.

## VII

### *Conclusion*

For all the reasons stated, this Court has concluded that plaintiff may proceed to trial on her claim of sexual harassment. However, she may not at that trial seek damages for constructive discharge. Nor at the trial may plaintiff go forward with her claim of unlawful retaliation.

Accordingly, it is this 20th day of September, 1999 by the United States District Court for the District of Maryland,

ORDERED:

---

5. Beatty recommended that plaintiff be suspended for five days without pay. This never occurred. After speaking to plaintiff, Director Haire decided not to enforce the recommended suspension.

1. That defendant's motion for summary judgment is hereby granted in part and denied in part;

2. That defendant's motion for summary judgment is hereby denied as to Count I of the complaint; and

3. That defendant's motion for summary judgment is hereby granted as to Count II of the complaint.