**Tyrone Lloyd WALKER, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**No. CIV.A. 99–2087 (RMU).**

United States District Court, District of Columbia.

June 20, 2000.

Antoini M. Jones, Gibson, Jones & Associates, Greenbelt, MD, for plaintiff, Mr. Tyrone Lloyd Walker.

Douglas L. Johnson, Assistant General Counsel, Washington Metropolitan, Area Transit Authority (WMATA), Washington, DC, for defendant, Washington Metropolitan Area Transit Authority (WMATA).

*MEMORANDUM OPINION*

**Granting the Defendant's Motion for Summary Judgment**

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on the defendant Washington Metropolitan Area Transit Authority ("WMATA")'s motion for summary judgment. The plaintiff alleges that WMATA racially discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 *et seq.*, as amended ("Title VII") and the District of Columbia Human Rights Act, D.C.Code § 1–2501 *et seq.*, as amended ("DCHRA").[1] Specifically, the plaintiff alleges that on August 4, 1998, WMATA took a disciplinary action against him because of his race and in retaliation for a discrimination charge he had filed with the United States Equal Employment Opportunity Commission ("EEOC") in 1992. *See* Compl. ¶ 12.

WMATA contends that the court should dismiss both the discrimination and retaliation claims. First, WMATA seeks to dismiss the Title VII discrimination claim on the ground that the plaintiff has shown neither an adverse employment action taken against him nor any racially disparate treatment. *See* Def.'s Mot. for Summ. J. at 6, 8, 10. Second, WMATA seeks to dismiss Mr. Walker's Title VII retaliation claim on the ground that the plaintiff filed the complaint untimely and has failed to exhaust all available administrative remedies. *See id.* at 14, 15. Lastly, WMATA seeks to dismiss the DCHRA claims on the ground that it is an entity created by interstate compact and so is not subject to DCHRA claims. *See id.* at 15–17.

1. The DCHRA provides, in pertinent part,

It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race . . . of any individual: (1) By an employer.—To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, aggregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise *adversely* affect his status as an employee.
D.C.Code § 1–2512.

For the reasons which follow, the court will grant the motion for summary judgment and will dismiss the complaint in its entirety with prejudice.

## II. BACKGROUND

Tyrone Lloyd Walker is a 58-year-old African-American man who has been employed by WMATA since June 1970. *See* Compl. ¶ 11; Def.'s Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s SMF") ¶ 2; Def.'s Mot. for Summ. J. at 3. In May 1992, Mr. Walker filed a discrimination charge against WMATA with the EEOC that ultimately ended with a settlement in April 1993.[2] *See* Compl. ¶ 12; Def.'s SMF ¶¶ 7, 25.

The instant action arises out of the events of July 13, 1998, when Mr. Walker was working as Station Manager at the Arlington Cemetery Metrorail Station in Virginia. *See* Compl. ¶ 5; Def.'s SMF ¶ 4; Def.'s Mot. for Summ. J. at 1. On that day, a female patron asked Mr. Walker for directions and, he says, began rubbing his arm. *See id.* Mr. Walker asked the female patron to stop rubbing his arm, and when she did not stop, Mr. Walker became upset and yelled at her. *See* Compl. ¶ 13; Def.'s SMF ¶ 3. As related by WMATA, the patron's account of the incident is different; the patron complained that Mr. Walker was rude in response to her request for directions and "tried to embarrass her." *See* Def.'s Mot. for Summ. J. at 3. As a result, WMATA reprimanded Mr. Walker by issuing a Notice of Caution and

Reinstruction against him on August 4, 1998. *See* Compl. ¶ 13; Def.'s SMF ¶ 5. Believing that WMATA had issued the disciplinary notice unlawfully, Mr. Walker filed a discrimination charge with the EEOC on August 25, 1998. *See* Compl. ¶ 16; Def.'s SMF ¶ 5. One month later, WMATA rescinded the Notice of Caution and Reinstruction on September 24, 1998.[3] *See* Compl. ¶ 17; Def.'s SMF ¶ 10. WMATA states, and Mr. Walker does not contest, that the rescinded Notice can have no effect on his work duties, salary, benefits or opportunities for training or promotion. *See* Def.'s Mot. for Summ. J. at 3-4; Def.'s SMF ¶¶ 8-10.

In his complaint, Mr. Walker alleges that WMATA racially discriminated and retaliated against him in violation of Title VII. *See* Compl. ¶¶ 14, 15, 16. First, Mr. Walker contends that WMATA issued the disciplinary notice on the basis of his race and gave disparate treatment to a white co-worker in a similar situation.[4] *Id.* ¶¶ 14, 15. Second, Mr. Walker contends that WMATA issued the disciplinary notice in retaliation for his 1992 EEOC charge rather than as a genuine response to the patron's complaint. *Id.*

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The substantive law upon which

2. In his 1992 EEOC charge, Mr. Walker alleged racially disparate treatment. *See* Compl. ¶ 12. The resultant settlement did not acknowledge any wrongdoing by WMATA. *See id.*

3. WMATA explains that it rescinded Mr. Walker's disciplinary notice because it failed to issue the notice within 20 days of the incident as required by the collective bargaining agreement governing Mr. Walker's employment with WMATA. *See* Compl. ¶ 17; Def.'s SMF ¶ 19.

4. Specifically, Mr. Walker alleges that Mr. R.D. Wooten, a white co-worker, committed a

similar offense (mistreated a patron) but was not issued a disciplinary notice until Mr. Walker objected to his own disciplinary notice. *See* Compl. ¶¶ 16, 18, 19. While the court does not reach Mr. Walker's allegation of disparate treatment, the court notes that WMATA has asserted a non-discriminatory explanation for its delay in issuing a disciplinary notice to Mr. Walker's white co-worker. *See* Def.'s Mot. for Summ. J. at 4-5; Def.'s SMF ¶¶ 11-17. Moreover, WMATA contends that the white employee was disciplined more harshly than Mr. Walker. *See* Def.'s Mot. for Summ. J. at 10-12.

a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Skelton v. ACTION,* 668 F.Supp. 25, 28 (D.D.C.1987), *aff'd,* 1988 WL 156306 (D.C.Cir.1988). If a fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Skelton,* 668 F.Supp. at 28. Only disputes over facts that can establish an element of the claim, and thus might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the factual allegations of the nonmoving party as true and must draw all justifiable inferences therefrom in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the nonmoving party to establish "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position ... there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505; *Borgo v. Goldin,* 204 F.3d 251, 254 (D.C.Cir. 2000). If the evidence in favor of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

Applying the foregoing standard, the court concludes that there are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law.

## IV. DISCUSSION

**Claims for Discrimination and Retaliation Fail for Lack of "Adverse Employment Action" under both Title VII and DCHRA**

WMATA moves to dismiss Mr. Walker's discrimination claim on the ground that he has not made out a *prima facie* case of discrimination. WMATA contends, *inter alia,* that the disciplinary action taken against Mr. Walker (the Notice of Caution and Reinstruction) does not constitute an adverse employment action within the meaning of Title VII. The court agrees with the defendant on this point.

■ *Title VII Requires Adverse Employment Action.* Under the framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII plaintiff is first required to establish a *prima facie* case of racial discrimination by demonstrating that "(1) the plaintiff is a member of a protected class; (2) *the plaintiff has suffered an adverse employment action;* and (3) other similarly situated employees from outside the protected class were not subject to that action." *McDonnell,* 411 U.S. at 802–805, 93 S.Ct. 1817; *Brown v. Brody,* 199 F.3d 446, 455 (D.C.Cir.1999) (emphasis added); *Keith v. Duffey,* 77 F.Supp.2d 46, 50 (D.D.C.1999); *accord Nichols v. Comcast Cablevision of Maryland,* 84 F.Supp.2d 642, 653 (D.Md.2000). Similarly, to establish a *prima facie* case of retaliation under Title VII, the plaintiff must demonstrate an adverse employment action. *See Cones v. Shalala,* 199 F.3d 512, 520 (D.C.Cir.2000); *Childers v. Slater,* 44 F.Supp.2d 8, 18 (D.D.C.1999); *accord Settle v. Baltimore County,* 34 F.Supp.2d 969, 993 (D.Md.1999), *aff'd,* 203 F.3d 820 and 203 F.3d 822 (4th Cir.2000).

■ *DCHRA Requires Adverse Employment Action.* Likewise, "the legal analysis of a DCHRA claim follows the

pattern established" by *McDonnell Douglas* for Title VII claims. *See Johnson v. Curtis Dworken Chevrolet,* 242 B.R. 773, 779 (D.D.C.1999). Consequently, to sustain a claim of discrimination or retaliation under the DCHRA, Mr. Walker must allege an adverse employment action. *See Carpenter v. Federal National Mortgage Ass'n.,* 174 F.3d 231, 236 n. 3 (D.C.Cir.) (DCHRA retaliation claim) (citing *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 368 (D.C.1993)), *cert. den.,* —— U.S. ——, 120 S.Ct. 184, 145 L.Ed.2d 155 (1999); *see, e.g., King v. Georgetown University Hospital,* 9 F.Supp.2d 4, 6 (D.D.C.1998) (granting summary judgment to employer on DCHRA discrimination claim where employee showed her job responsibilities were altered but could not show any change in her salary, benefits or job grade); *Hunter v. Ark Restaurants Corp.,* 3 F.Supp.2d 9, 20 (D.D.C.1998) (granting summary judgment to employer on DCHRA retaliation claim because supervisors' scolding employee and filing disciplinary write-ups against him had no "demonstrably adverse employment consequence").[5]

■ *The Plaintiff Has Failed to Allege an Adverse Employment Action.* An employee must show that he has "suffered an adverse personnel action in order to establish a *prima facie* case of disparate-treatment discrimination." *Brown v. Brody,* 199 F.3d 446, 455 (D.C.Cir.1999); *Bailey v. Henderson,* 2000 WL 488466, *3 (D.D.C. 2000); *accord Nichols v. Comcast Cablevision of Maryland,* 84 F.Supp.2d 642, 653 (D.Md.2000).

5. The court has already explained that Mr. Walker's DCHRA discrimination and retaliation claims must be dismissed because he has failed to allege the requisite adverse employment action. In any event, this court has held that WMATA is not subject to claims under the DCHRA. *See Lucero–Nelson v. WMATA,* 1 F.Supp.2d 1 (D.D.C.1998); *Middleton v. WMATA,* Dkt. No. 92–cv–946, slip op. at 6–7 ( (D.D.C. Oct. 13, 1992) (Hogan, J.) (Def.'s Mot. for Summ. J., Ex. 4); *Jones v.*

While this circuit has not exhaustively defined what constitutes an adverse employment action under Title VII, "courts have consistently focused on ultimate employment decisions such as hiring, granting leave, promoting, and compensating . . . [and not] interlocutory or intermediate decisions having no immediate effect upon employment decisions." *Taylor v. FDIC,* 132 F.3d 753, 764 (D.C.Cir.1997); *see also Mungin v. Katten, Muchin & Zavis,* 116 F.3d 1549, 1557 (D.C.Cir.1997) (court found that a transfer that does not involve a demotion in form or substance was not an adverse personnel action); *Carpenter v. Federal Nat'l Mortgage Ass'n,* 949 F.Supp. 26, 28 n. 3 (D.D.C.1996) (noting that a significant decrease in material responsibilities constitutes an adverse personnel action); *Kilpatrick v. Riley,* 2000 WL 708391, *11 (D.D.C.2000). "There are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the proscriptions of Title VII." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.), *cert. den.,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981); *see, e.g., Von Gunten v. Maryland Dep't. of the Environment,* 68 F.Supp.2d 654 (D.Md. 1999) (dismissing Title VII retaliation claim on ground that employer did not take adverse action by taking away employee's official vehicle, according extra scrutiny to her reports and giving her unsatisfactory job rating).

On the other hand, this court has recognized that "an employee need not be fired, demoted or transferred" to constitute an adverse personnel action. *See Gary v. WMATA,* 886 F.Supp. 78, 90 (D.D.C.1995).

*WMATA,* Dkt. No. 89–cv–552 (RCL), slip. op. (D.D.C. Aug. 7, 1992) (Def.'s Mot. for Summ. J.; Ex. 3); *Gay Activists Alliance v. WMATA,* Dkt. No. 78–cv–2217, slip op. at 6 (D.D.C. July 5, 1979) (Pratt, J.); *see also* 4 Op. of Corp. Counsel dated June 14, 1979 at 203, 205 (Def.'s Mot. for Summ. J., Ex. 2). The plaintiff concedes that his DCHRA claims must be dismissed on this ground. *See* Opp. to Def.'s Mot. for Summ. J. ¶¶ 6, 14.

For example, the courts have held that comments directed at an employee may constitute adverse personnel action if they are so egregious as to "alter the conditions of employment." *See Patterson v. McLean Credit Union*, 491 U.S. 164, 179, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (holding that racial harassment was an adverse employment action since it affected a "term, condition, or privilege of employment"); *see, e.g., Henry v. Guest Servs., Inc.*, 902 F.Supp. 245, 251 (D.D.C.1995) (holding that management personnel jokes directed at the plaintiff's depression were not severe enough to constitute adverse employment action), *aff'd*, 98 F.3d 646 (D.C.Cir. 1996); *see also Passer v. American Chemical Soc'y*, 935 F.2d 322, 331 (D.C.Cir.1991) (cancellation of an employee's public symposium was an adverse personnel action); *Blake v. Johns Hopkins University*, 1994 WL 617294 (D.Md.1994) (not allowing an employee to make up time when he was late "arguably constitutes an adverse employment action").

■ An employment decision does not rise to the level of an actionable adverse action, however, unless there is a "tangible change in the duties or working conditions constituting a material employment disadvantage." *Kilpatrick*, 98 F.Supp.2d 9, 10; *see also Brown v. Brody*, 199 F.3d 446, 456 (D.C.Cir.1999); *Childers v. Slater*, 44 F.Supp.2d 8, 19 (D.D.C.1999). In sum, for there to be an adverse employment action, there must be a "significant change in employment status." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (noting that a tangible employment action in most cases inflicts direct economic harm).

Mr. Walker alleges that WMATA took an adverse personnel action against him by issuing a Notice of Caution and Reinstruction (which it rescinded shortly thereafter). In *Brown v. Brody*, 199 F.3d 446, 458 (D.C.Cir.1999), the D.C. Circuit squarely held that a letter of admonishment, strikingly similar to the disciplinary notice filed against Mr. Walker, did not constitute an adverse personnel action because it affected neither the appellant's grade nor his salary. Similarly, in *Johnson v. Danzig*, 2000 WL 458887, *2 (4th Cir.2000), the Fourth Circuit held that a letter of reprimand and admonishment was not an actionable adverse employment action. *Accord Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.), *cert. den.*, 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997); *Lucas v. Cheney*, 821 F.Supp. 374, 376 (D.Md.1992) (holding that a letter of reprimand did not "represent an adverse employment action within the scope of Title VII"), *aff'd*, 991 F.2d 790 (4th Cir.1993). The mild disciplinary notice filed against Mr. Walker did not effect any material change in his title, duty, salary, benefits, or working hours, nor does he so allege. *Cf. Medina v. Henderson*, 1999 WL 325497, *1 (D.C.Cir.1999) (holding that even a change in assignment or work-related duties did not constitute an adverse employment action if unaccompanied by a decrease in salary or workhour changes). Moreover, it bears emphasizing that WMATA rescinded the disciplinary notice shortly after it was issued.

■ Thus, the court finds that WMATA's rescinded August 1998 Notice of Caution and Reinstruction was not an adverse personnel action within the intendment of Title VII.[6] Since Mr. Walker fails to satisfy this element of a *prima facie* case of discrimination and retaliation, the court will dismiss his claims that the disciplinary notice constituted actionable racial discrimination or retaliation. *Cf. Brown v. Brody*, 199 F.3d 446, 457 (D.C.Cir.1999).

## V. CONCLUSION

For the foregoing reasons, the court will grant the defendant's motion for summary

---

**6.** Because Mr. Walker has not made out a *prima facie* case of discrimination, this court need not address whether or not there was any disparate treatment among similarly situated employees.

judgment. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed on this 20 day of June 2000.

### ORDER

**Granting the Defendant's Motion for Summary Judgment; Vacating Status Hearing; Terminating Case**

For the reasons set forth in this court's separately and contemporaneously executed Memorandum Opinion,

it is this 20 day of June 2000,

**ORDERED** that the defendant's motion for summary judgment is hereby **GRANTED**; and it is

**FURTHER ORDERED** that the complaint is **DISMISSED** with prejudice; and it is

**ORDERED** that the status hearing scheduled for June 29, 2000 is hereby **VACATED**.

The Clerk shall terminate this case and remove it from this court's docket.

**SO ORDERED.**

**THIS IS A FINAL AND APPEALABLE ORDER.**