**Igor BRODETSKI, Plaintiff,**

**v.**

**Joseph DUFFEY, Director, USIA and Voice of America, et al., Defendants.**

**No.  CIV.A. 98–839 RWR.**

United States District Court, District of Columbia.

March 28, 2001.

Igor Brodetski, Rockville, MD, Pro se.

Wyneva Johnson, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiff Igor Brodetski,[1] an employee with the Russian Branch of Voice of America ("VOA"), a division of the United States Information Agency ("USIA"), brought this claim against defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2, 2000e–3 (1994), as amended ("Title VII"). Plaintiff alleged that he was subjected to harassment, a hostile work environment and discriminatory treatment in retaliation for his testimony at the equal employment opportunity ("EEO") hearing of a colleague in 1989, and for his complaints against defendants that he filed with the USIA Office of Civil Rights ("OCR") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has moved to amend his complaint, and defendants have moved for summary judgment.

Just cause exists for amendment of the complaint, and plaintiff's motion will be granted. Plaintiff's amendment, which includes seven additional incidents that parties have not had the opportunity to address in their summary judgment filings, will not be evaluated in the present summary judgment analysis.

As to the remaining incidents, because plaintiff has established a prima facie showing of retaliation with respect to his two promotion denials, and because defendants did not attempt to articulate legitimate, non-retaliatory reasons for their actions, defendants' motion for summary judgment will be denied as to these promotion denials. As to plaintiff's remaining claims of retaliation, plaintiff has failed to establish a prima facie case, and defendants' motion for summary judgment as to those claims will be granted.

## BACKGROUND

Brodetski has been employed as an International Radio Broadcaster with VOA since 1984. (Compl.Ex.1(a) at 5.) Between 1984 and 1987, VOA management gave Brodetski favorable performance ratings. (Compl.Ex. 1(b) at 2–3.) In mid–1987, Brodetski provided an affidavit in support of his colleague's harassment and retaliation claims against the VOA. In March 1989, plaintiff testified at the same colleague's EEOC hearing. (*Id.* at 3.)

Immediately after plaintiff's 1989 EEO activity, plaintiff began documenting incidents of defendants' alleged retaliation against him for protected EEO activity in violation of Title VII. (Compl.Ex.1(a) at 5–17.) To date, plaintiff has filed eighty-one complaints with the OCR and EEOC against defendants, (Pl.'s Mot. # 10 to Consolidate (or to Amend) at 1), almost all of which allege retaliation.

This civil action is the fourth of four that plaintiff has filed in this Court against defendants stemming from the OCR and EEOC complaints. The first, Civil Action No. 93–1610, claimed that defendants lowered his yearly evaluation rating because he had participated in EEO activity on behalf of his colleague. That case was decided by Judge Urbina on May 23, 1995 in defendants' favor. The second and third, Civil Action Nos. 98–126 and 98–732, are the subjects of other orders issued today.[2]

---

1. Plaintiff spells his name "Brodeski" in his complaint, but the majority of his subsequent submissions, as well as his affidavit and the brief filed on his behalf for the Equal Employment Opportunity Commission hearing, spell his name "Brodetski." It is assumed that the spelling on the affidavit is correct.

2. Defendants have argued that plaintiff has sought to bring claims in this case that were, or could have been, brought in the prior

Plaintiff's numerous OCR complaints that are the subjects of this case fall into four subject matter groups. In the first group, plaintiff alleged that defendants retaliated against him by denying his administrative requests and subjecting him to inconvenient administrative changes. For example, defendants twice denied plaintiff's requests for administrative leave that he claimed was necessary to conduct his EEO activities properly. (Compl. Ex. 2; Pl.'s Mot. 7/21/98.) In particular, on November 6, 1996, plaintiff alleged that defendants denied him leave to prepare for and commute to an EEOC settlement conference concerning several of his EEO complaints. (Compl.Ex.2.) On January 22, 1998, plaintiff alleged that VOA management also "denied [him] . . . administrative leave of 8 hours so that [he] could examine the contents of . . . 30 complaints filed in the EEOC." (Pl.'s Mot. 7/21/98.)

In addition, plaintiff claimed that defendants altered the department schedule, forcing him to ask for a change in his personal schedule in order to avoid coming in two hours early for his shift. (Pl.'s Mot. 8/5/99.) Defendants denied plaintiff's request, despite allegedly granting similar requests for other employees. (*Id.*) Further, defendants attempted to add a new provision to the yearly evaluations, designated the "Teamwork Element," that would factor in the employee's team spirit. (Pl.'s Mot. 11/10/99.) Although defendants ultimately decided against adding the element, plaintiff claimed that this proposal was intended to punish him for his EEO activity. (*Id.*)

Plaintiff also filed two complaints claiming that defendants denied him his right to select a new work station based on his seniority within the office. (Pl.'s Mot. 3/27/00.) Specifically, plaintiff cited two

instances when colleagues with less seniority were allowed select a new work station. He alleged that he was the only person in the office "deprived of [his] right to choose" a work station. (Id.) Plaintiff perceived all of these incidents as proof that defendants used administrative procedures to retaliate against him.

Plaintiff's second group of complaints alleged that defendants distributed the workload within the Russian Branch inequitably and unevenly, deliberately overloading him in retaliation for his EEO activity. Plaintiff points to several occasions when he claimed to have shouldered a heavier burden than his peers did. (Pl.'s Mot. 7/21/98; Pl.'s Mot. 4/23/99.) On January 15, 1998, plaintiff alleged that he was the only worker staffing the news desk, even though four or five employees normally staff the desk. (Pl.'s Mot. 7/21/98.) Plaintiff alleged that on July 1, 1998, defendants assigned him to the night shift. (Pl.'s Mot. 4/23/99.) Plaintiff documented the night shift assignments again in a memorandum dated September 9, 1998, claiming that defendants had scheduled him for twice as many night shifts as his peers. (*Id.*) Plaintiff acknowledged, however, that defendants balanced the distribution of night shift work in response to his complaints. (Id.)

In addition, plaintiff recounted several incidents in which he said colleagues attempted to overload him by asking him to take on additional assignments. When one colleague asked plaintiff to translate several scripts on a night when plaintiff was already assigned to announce and write, plaintiff refused. (Pl.'s Mot. 3/27/00.) When the same colleague asked him to read the news for him a few months later, plaintiff again refused. On October 23,

---

cases. I read the instant complaint as alleging new claims, and referring to prior ones

solely to provide historical context for his new claims.

1999, the colleague again asked him to translate some material, but plaintiff refused a third time. The colleague allegedly complained to a supervisor about plaintiff's obstinance. (*Id.*) On October 31, 1999, plaintiff complained that a supervisor assigned him a large task late in the day and expected him to complete it before he left work. When he accused the supervisor of "pressing" him, she responded that " '[m]aybe the pressing is good.' " (*Id.*) Finally, plaintiff claimed that in response to his complaints about the extra work, defendants failed to give him enough assignments at certain times. (*Id.*) Plaintiff has construed all of defendants' assignment allocations as retaliatory.

Plaintiff also alleged that defendants violated "[t]he principle of equal work for equal pay" by assigning the same tasks to employees despite differences in position and salary. (Pl.'s Mot. 3/27/00.) Specifically, plaintiff claimed that he was assigned many of the same tasks as two editors in higher positions who receive higher salaries, stating, "I complain because I am forced to do the job of an employee with a higher grade which was given to the employee precisely for doing this particular job and which is not a part of my job description ANY LONGER." (*Id.*)

The third group of complaints involves several disputes that plaintiff had with his colleagues which defendants allegedly did not adequately respond to or try to prevent, and an alleged effort to stifle plaintiff's expression. On August 15, 1999, plaintiff alleged that a colleague was rude when he told plaintiff to leave the studio while he was observing a broadcast. (Pl.'s Mot. 8/25/99.) When plaintiff reported this confrontation, defendants did not punish the offender. (*Id.*) On October 20, 1999, plaintiff claimed that three co-workers were talking loudly in the office and

referred to plaintiff as a "cretin." Again, defendants did not reprimand the co-workers. (Pl.'s Mot. 3/27/00.) Plaintiff repeatedly complained to defendants that a co-worker harassed him by turning up the television set near plaintiff's desk to excessive volumes. Despite the ensuing heated arguments, defendants never intervened. (Pl.'s Mot. 9/10/98.) When plaintiff learned that his co-workers took his toaster oven from the office kitchen and threw it in the trash can, defendants did not take action. (Pl.'s Mot. 3/27/00) Finally, plaintiff alleged that another co-worker harassed him by fondling his (the co-worker's) wife in plaintiff's presence. Defendants took no action when plaintiff reported the incident. (*Id.*)

Plaintiff further alleged that defendants criticized him for expressing his views in response to defendants' request for employee input "concerning drastic changes in furniture and schedule proposed by the Russian Branch management." Plaintiff wrote a memorandum that defendants claimed " 'hurt other people's feelings.' " Defendants advised plaintiff that he should retain union counsel for a subsequent discussion on the matter. Plaintiff maintained that the memorandum was perfectly "ethical and polite," and that the only reason defendants reprimanded him was in retaliation for his EEO activity. (*Id.*)

The fourth group of complaints addresses defendants' refusals to promote plaintiff on two separate occasions, allegedly because of his EEO activity. (Compl. at 5.) Plaintiff applied for two different vacancies within the Russian Branch that were posted in March 1994. He was invited to interview for one of the openings and made a specific point of informing the selection panel of his protected EEO activity. Despite plaintiff's efforts, he was not offered either position. (*Id.*) He also claimed that he was better qualified than

both of the candidates who were selected because he specializes in Russian, while the two selected candidates do not. (Compl.Ex.1(a) App. 1 at ¶ 21.) Plaintiff stated that he is the "only person who never got a Grade promotion, the reason being his protected activity which went contrary to the Agency's management's wishes." (Compl. at 5.)

Plaintiff brought this suit after exhausting his administrative remedies by submitting these complaints to the OCR and, subsequently, filing appeals on the complaints at issue with the EEOC. Plaintiff now appeals to this Court pursuant to 29 C.F.R. § 1614.110(b) (West 2000), and seeks to add new incidents to this case.

## MOTION TO CONSOLIDATE OR TO AMEND

Plaintiff filed a motion to consolidate or to amend, seeking to join to the complaint seven additional incidents of alleged retaliation that have occurred since he filed this action. (Pl.'s Mot. # 10 to Consolidate (or to Amend) at 1.)[3] Five of these incidents involve work assignments, whereby defendants allegedly distributed the workload inequitably to burden plaintiff in retaliation for plaintiff's EEO activity. The remaining two incidents involve disputes between plaintiff and his colleagues, which defendants allegedly did not try to prevent. Plaintiff asserts that the additional incidents, like the incidents alleged in his original complaint, reflect a continuing pattern of workplace retaliation through defendants' disproportionate assignment of work duties to plaintiff and defendants' general campaign against plaintiff's EEO activities. Defendants oppose consolidation, claiming that the new incidents are not the subject of an action pending before the court as required under Fed.R.Civ.P. 42(a), and that the new incidents and the incidents in the original complaint do not involve a common question of law and fact. (Def.'s Opp'n to Pl.'s Mot. # 10 to Consolidate (or to Amend) at 3–4.) Construing plaintiff's motion as one to amend, and finding amendment proper, I will grant this motion.

While the right to amend or supplement the original pleading is not automatic, *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), "leave [of the court] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Factors to consider in evaluating a motion to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182, 83 S.Ct. 227. At the same time, "refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion." *Id.*

Defendants do not address the substance of the individually alleged incidents in their opposition to plaintiff's motion and offer no argument that the amendment would unduly prejudice them. Therefore, plaintiff's motion to amend will be granted. However, although there is no indication that plaintiff inordinately delayed moving to amend or that plaintiff acted in bad

---

**3.** In a Memorandum and Order dated July 27, 2000, I denied this motion as premature (Mem. and Order of July 27, 2000, at 2, 5–6) since the EEOC had not issued a final decision on those complaints. *See* 29 C.F.R. § 1614.110(b). Plaintiff refiled this motion on August 16, 2000, after the EEOC issued a final decision dismissing the complaints. (Pl.'s Mot. # 10 to Consolidate (or to Amend) at Ex. 2.) Plaintiff's August 16, 2000 motion, therefore, is now subject to judicial review.

faith, the Court cautions that any subsequent motions by plaintiff to add additional incidents to his complaint would unduly threaten to prolong this litigation and preclude finality, and will not be favored.

### SUMMARY JUDGMENT

Defendant has moved for summary judgment on the original complaint. Summary judgment is appropriate only if "there is no genuine issue of material fact" for submission to a fact-finder. Fed. R.Civ.P. 56(c). No genuine issue exists unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

The mere allegation of some factual dispute between the parties, however, is not sufficient to defeat a motion for summary judgment. *Id.* at 247, 106 S.Ct. 2505. While the movant bears the initial burden of proving that there is "no genuine issue," once that burden has been met, the nonmovant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265. As the Court stated, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *See id.* at 323–324, 106 S.Ct. 2548.

### I. *Plaintiff's Title VII Retaliation Claims*

■ Title VII retaliation actions are governed by the procedural framework established in *McDonnell Douglas v. Green,*

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff first must establish a prima facie case of retaliation. If plaintiff succeeds, defendants may rebut plaintiff's prima facie case by disputing the facts or by offering a "legitimate, nondiscriminatory reason" for their actions. *Id.* at 802, 93 S.Ct. 1817. If defendants set forth a successful rebuttal, plaintiff must prove that the reason defendants offered for their actions was merely pretextual. *Id.* at 804, 93 S.Ct. 1817. This burden shifting framework, initially established to cover private discrimination claims under Title VII, also applies to federal employees claiming retaliation. *See, e.g., Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985) (holding that federal government employee successfully established prima facie case of retaliation under *McDonnell Douglas* but failed to prove employer's proffered reason was pretextual).

■ To prove a prima facie case of retaliation, plaintiff must establish that (1) he engaged in statutorily protected activity; (2) defendant took an adverse personnel action; and (3) a causal connection existed between the protected activity and the adverse personnel action. *See Brown v. Brody,* 199 F.3d 446, 452–53 (D.C.Cir. 1999) (citing *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985) (quoting *McKenna v. Weinberger,* 729 F.2d 783, 788 (D.C.Cir. 1984))); *see also Cones v. Shalala,* 199 F.3d 512, 520 (D.C.Cir.2000); *Childers v. Slater,* 44 F.Supp.2d 8, 18 (D.D.C.1999).

### A. *Causal Connection*

■ A causal connection may be inferred "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell,* 759 F.2d at 86. By showing both knowledge and proximity in time, plaintiff

may establish the causal connection needed for a prima facie case of retaliation.

Although courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length. *See, e.g., Goos v. Nat'l Ass'n of Realtors,* 715 F.Supp. 2, 3–4 (D.D.C.1989) (holding that five weeks constituted a short enough time lapse to establish a causal connection); *Castle v. Bentsen,* 867 F.Supp. 1, 3 (D.D.C.1994) (holding that three to five months is a short enough time lapse between EEO activity and reprisal to establish a causal connection); *Devera v. Adams,* 874 F.Supp. 17, 21 (D.D.C.1995) (holding that "an eight month interval between the two events is not strongly suggestive of a causal link"); *Garrett v. Lujan,* 799 F.Supp. 198, 202 (D.D.C.1992) (holding that almost a year "between plaintiff's EEO activity and the adverse employment decision is too great [a length of time] to support an inference of reprisal"); *but see Hayes v. Shalala,* 902 F.Supp. 259, 264 (D.D.C.1995) (holding that a causal connection existed based on the time plaintiff first became vulnerable to retaliation, even though that time occurred three years after plaintiff engaged in protected activity).

■ Plaintiff's original EEO activity on behalf of his colleague occurred in 1989. The earliest of the alleged incidents in this case took place in January 25, 1997, approximately eight years later. This eight-year time lapse is too long to establish a causal connection between plaintiff's protected activity and the alleged retaliation.

■ Broadly read,[4] though, plaintiff's retaliation complaints suggest that defendants also retaliated against him for his ongoing, more recent EEO activity, namely, filing numerous EEO complaints against the VOA Russian Branch Management beginning in 1989 and continuing to the present. (Compl. at 5, Exs. 1(a), 2; Pl.'s Mot. 7/21/98, 4/23/99, 8/5/99, 11/10/99, 3/27/00.) While there is too long a time lapse between plaintiff's 1989 EEO activity and the four groups of incidents at issue, plaintiff's more recent EEO activities may be close enough in time to these incidents to support an inference of a causal connection.

### B. *Adverse Employment Action*

■ While plaintiff may have established a causal connection to his recent EEO activity, plaintiff has failed to establish any adverse employment actions, with the exception of those allegations concerning promotion denials. Although "an employee need not be fired, demoted or transferred" for an adverse employment action to occur, *see Gary v. Washington Metro. Area Transit Auth.,* 886 F.Supp. 78, 90 (D.D.C.1995), an "employment decision does not rise to the level of an actionable adverse action ... unless there is a 'tangible change in the duties or working conditions constituting a material employment disadvantage.'" *Walker v. Washington Metro. Area Transit Auth.,* 102 F.Supp.2d 24, 29 (D.D.C.2000) (quoting *Kilpatrick v. Riley,* 98 F.Supp.2d 9, 21 (D.D.C.2000), citing *Brown,* 199 F.3d at 456, and *Childers,* 44 F.Supp.2d at 19). In

---

4. Plaintiff appears *pro se*, and, consequently, I must read his complaint liberally. *See Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir.1999) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)). The Supreme Court directs that a *pro se* plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines,* 404 U.S. at 520, 92 S.Ct. 594.

this Circuit, and others, "courts cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct." *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 765 (D.C.Cir. 1997). *See Brown*, 199 F.3d at 457 ("Mere idiosyncracies of personal preference are not sufficient to state an injury"); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) ("not everything that makes an employee unhappy is an actionable adverse action"); *see also Childers*, 44 F.Supp.2d at 20 (to constitute an "adverse employment action, the conduct must be so egregious as to alter the conditions of employment").

### 1. *Administrative Changes and Requests*

▮ Plaintiff has failed to show any adverse employment action regarding defendants' decisions to deny plaintiff administrative leave to prepare for and commute to meetings about his EEO complaints. Plaintiff did not assert that defendants denied him time to participate in any meetings called by the EEOC Administrative Judge in connection with his EEO complaints. He merely alleged that he was denied additional time off for preparation and commuting. Defendants' denial, however, did not deter plaintiff from filing new complaints or taking full advantage of opportunities to present his EEO case.

Defendants denied plaintiff's requests for additional time off based on an EEOC Administrative Judge's order instructing that plaintiff's request be denied. This order acknowledged that defendants must provide sufficient leave for plaintiff to prepare for and attend EEO meetings, but stated that the "[c]omplainant's request does not fall within these provisions, however, and will not be granted." (Pl.'s Mot. 7/20/98). Because defendants' decision has not hindered plaintiff's EEO participation,

and because defendants based their denial on an EEOC Administrative Judge's order, plaintiff's allegations that he was denied sufficient administrative leave cannot constitute a cognizable adverse employment action.

▮ Nor has plaintiff demonstrated that defendants' decision to change the office schedule, without allowing plaintiff leave to alter his personal schedule, constituted an adverse employment action. Although plaintiff alleges that, because of the schedule revisions, he was forced to come in two hours early for his shift, "a mere inconvenience" is not sufficiently adverse to sustain a prima facie case. *Crady v. Liberty Nat'l Bank & Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993); *see also Childers*, 44 F.Supp.2d at 19 ("[m]ere inconveniences and alteration of job responsibilities will not rise to the level of adverse action") (citing *Jones v. Billington*, 12 F.Supp.2d 1, 14 (D.D.C.1997)). Plaintiff alleged that defendants permitted other employees to shift their schedules while he was required to comply with the schedule as issued. Despite plaintiff's feeling that he was treated differently from his peers, courts cannot interfere in every personnel decision. "[Title VII] is not intended as a vehicle for judicial review of business decisions. Nor does [Title VII] allow a court to sit as a super-personnel department." *Schaff v. Shalala*, Nos. 92–1251, 93–1993, 1994 WL 395751, at *5 (D.Md. July 14, 1994). Defendants' decision to deny plaintiff leave to alter his schedule appeared to cause plaintiff personal inconvenience but it does not rise to the level required to constitute an adverse employment action.

Plaintiff also claimed that defendants attempted to retaliate against him by proposing to add an element to the yearly performance evaluations that would factor in an employee's team spirit. Defendants' proposal did not rise to the level of an

adverse employment action. Importantly, after plaintiff and others complained about the addition, defendants eliminated the teamwork proposal, rendering plaintiff's complaint moot.

██ Plaintiff's allegations that defendants denied him his right to choose a new workstation on two occasions do not constitute adverse employment actions even if they made plaintiff feel slighted or wronged. *See Childers,* 44 F.Supp.2d at 19 ("not everything that makes an employee unhappy will constitute actionable adverse action"). In *Smart,* the court refused to consider minor workplace disagreements, holding that if all actions were granted judicial review no matter how minor, every "trivial employment action ... 'would form the basis of a discrimination suit.'" 89 F.3d at 441. Allowing plaintiff to bring a cause of action based on this claim would thwart the true remedial purpose of Title VII.

### 2. *Workload Distribution*

██ Plaintiff cannot show any adverse employment action based on his claim that defendants distributed the Russian Branch workload unevenly by overloading him with assignments. Plaintiff cited eight separate instances over a two-year period in which he said defendants assigned him a heavier workload than his peers, including a disproportionate number of night shifts, and solo shifts on a news desk normally staffed with four or more employees. In response to plaintiff's allegations of overloading, defendants told him that he was assigned to the news desk alone on one occasion because of "a temporary arrangement due to staff shortage." (Pl.'s Mot. 7/21/98.) In addition, plaintiff admitted that defendants altered the schedule to accommodate plaintiff's complaint that he was assigned to too many night shifts.

It is not out of the ordinary for employees to have been expected to shoulder an extra load on occasion over a two-year span, or to have been asked to step in if there were unexpected staff shortages. In *Crady,* 993 F.2d at 136, the court stated that "a materially adverse change in terms and conditions of employment must be more disruptive than ... an alteration of job responsibilities." Courts are not in a position to review every task that management assigns to employees. *See, e.g., Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1556 (D.C.Cir.1997); *Schaff,* 1994 WL 395751, at *7. In light of defendants' response to plaintiff's concerns, as well as the temporary and infrequent nature of the assignments over two years, plaintiff's allegations do not establish sufficiently adverse actions to sustain a prima facie case of retaliation. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (adverse employment action requires a "significant change in employment status").

In four similar instances, plaintiff alleged that his colleagues attempted to overload him with work. Plaintiff admitted, though, that in every instance, he refused to take on the extra work without consequence. Asking an employee to take on an added assignment, without requiring him to do so, does not constitute adverse employment action.

Plaintiff's final complaint concerning work inequity alleged that defendants required him to do the same work that employees did in higher positions. This is the level of personnel decision-making in which courts should not meddle. As with all of plaintiff's complaints that the Russian Branch management unfairly allocated the workload within the office, this circumstance does not rise to the level of an adverse employment action. Thus, none of

plaintiff's claims that he has been disproportionately burdened by defendants and his colleagues qualifies as an adverse employment action.

### 3. *Altercations with Co-workers*

■ Plaintiff's complaints of co-worker altercations, allegedly without defendants' intervention, do not constitute adverse employment actions. Plaintiff recounted several incidents where he alleged that his co-workers harassed him. A few of these alleged incidents sound unpleasant and one even sounds insulting. Plaintiff failed to allege, though, that his employment position was altered in any way as a result of these alleged altercations. Instead, the incidents, if true, merely establish that plaintiff's working environment was unpleasant at times. *See Childers*, 44 F.Supp.2d at 19 ("conduct that sporadically wounds or offends but does not hinder an employee's performance does not rise to the level of adverse action").

Many of the other alleged incidents do not warrant close examination because of the insignificance of the claims. For instance, plaintiff alleged that his colleague rudely ordered him to leave the studio after the Branch Director instructed him to attend the broadcast. This incident does not constitute an adverse employment action. While plaintiff was offended by the behavior, the dispute did not affect his employment position. In addition, plaintiff has complained that one of his colleagues repeatedly turned up the volume on the office television set. While plaintiff found the volume disruptive, these incidents hardly rise to the level of adverse employment action.

Plaintiff also has complained that several of his colleagues disparaged him in the office, one colleague fondled his (the colleague's) wife in front of plaintiff,[5] and another colleague threw plaintiff's toaster in the trash. Although these incidents may have been unpleasant, they do not constitute adverse employment actions unless there was a tangible effect on plaintiff's position or his ability to perform his job. In *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir.1989), the court found that humiliation is not a sufficiently adverse employment action because "public perceptions [are] not a term or condition of . . . employment." As the Eleventh Circuit stated in *Doe v. Dekalb County School Dist.*, 145 F.3d 1441 (1998), "not 'every unkind act' amounts to an adverse employment action." 145 F.3d at 1449; *see also Childers*, 44 F.Supp.2d at 19. Although potentially upsetting, none of these allegations is sufficiently adverse to establish a prima facie case of retaliation. At most, by cataloguing the disagreements and one-time run-ins with particular co-workers, plaintiff merely demonstrated conflict within the office, not adverse employment actions.

■ Finally, plaintiff accused defendants of badgering him for expressing his views. Specifically, plaintiff alleged that defendants called a meeting to criticize him for a memorandum that he had written. Defendants told him that the memo " 'hurt other people's feelings.' " (Pl.'s Mot. 3/27/00.) Plaintiff did not, however, allege that this criticism affected his

---

5. Plaintiff stated in one motion that his colleague's actions qualified as "sexual harassment." (Pl.Mot.3/27/00.) In order to assert a claim of sexual harassment of the plaintiff, the plaintiff must be able to show that his colleague would not have acted as he did but for plaintiff's sex. Plaintiff has not shown that such was the case here, nor does it seem that plaintiff intended such an allegation. Viewing the *pro se* motion liberally as required, I will consider the complaint as a claim of retaliation and not sexual harassment.

position or status. Criticism of an employee's performance unaccompanied by a change in position or status does not constitute adverse employment action. *See Brown*, 199 F.3d at 458 (letter of admonishment was not an adverse employment action, because it did not affect plaintiff's grade or salary); *Walker v. Washington Metro. Area Transit Auth.*, 102 F.Supp.2d 24, 29 (D.D.C.2000) (disciplinary notice was not adverse employment action, because it "did not effect any material change in [plaintiff's] title, duty, salary, benefits, or working hours"); *Childers*, 44 F.Supp.2d at 20 ("reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action"); *see also Sweeney v. West*, 149 F.3d 550, 557 (7th Cir.1998) (holding that, if criticizing employees were found actionable as retaliatory, the court "would be deterring employers from documenting performance difficulties, for fear that they could be sued for doing so"). Here, even when viewed in the light most favorable to plaintiff, defendants simply called a meeting to inform plaintiff that his memo was offensive to his colleagues. There is no indication that this criticism produced a tangible and actionable change in plaintiff's working conditions or duties. Therefore, the incident does not constitute an adverse employment action.

### 4. *Promotion Denials*

Plaintiff has, however, established a prima facie case of retaliation with respect to his allegations that defendants twice denied him promotions in 1994. Plaintiff established an adverse employment action that was causally connected to his protected EEO activity, but defendants failed to offer any legitimate, non-discriminatory reason as to why plaintiff did not receive either promotion. *McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. Consequently, plaintiff's allegations regarding promotion denials will withstand defendants' motion for summary judgment.

In Title VII cases involving promotion denials, the Court of Appeals for the District of Columbia Circuit has adjusted the *McDonnell Douglas* framework to determine whether plaintiff has made a prima facie case:

> Adjusting the *McDonnell* formula to cases of discriminatory refusal to promote is relatively simple. Thus to make out a prima facie case plaintiff must show that [he] belongs to a protected group, that [he] was qualified for and applied for a promotion, that [he] was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time plaintiff's request for promotion was denied.

*Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir.1981). While plaintiff carries the burden of establishing a prima facie case, courts merely require that plaintiff "establish facts adequate to permit an inference of retaliatory motive." *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C.Cir.1984).

In the instant case, plaintiff belonged to a protected group under Title VII because of his ongoing EEO activity. According to his complaint, plaintiff submitted applications for two vacant Russian Branch positions and stated that he was more qualified than the employees selected to fill the two vacancies who were not involved in EEO activity. In his affidavit, plaintiff admitted that the two employees selected for promotion were well qualified but asserted that he specialized in the Russian language while they did not. (Compl. Ex. 1, at App. 1 # 21.) He further alleged that he has a better radio presence, that he has made a greater con-

tribution to the Russian Branch, and that he is a stronger worker overall than the two employees who received the promotions. (*Id.*)

In addition, plaintiff demonstrated that he was seriously considered and interviewed for one of the two posted positions but that, despite his efforts, he was denied both positions. (Compl. Ex. 1, at 1.) Finally, the two employees had not participated in protected EEO activity. (Compl. Ex. 1, at App. # 21.) Plaintiff claimed that "in each single case the denial of promotion to me was an act of intended discrimination and retaliation for my participation in protected EEO activity." (*Id.*) Because plaintiff alleged the facts necessary to establish a prima facie case of retaliation with respect to his claim that he was twice denied promotions in 1994, and because defendants has failed thus far to rebut the prima facie case, plaintiff's claim as to his two promotion denials will withstand summary judgment.

## II. *Harassment or Hostile Work Environment*

■ Plaintiff's filings, taken together, raise an additional claim of hostile work environment. In his affidavit, plaintiff asserted that, while "[e]ach of [the complaints] seems petty and insignificant[,] their cumulative strength is very considerable." (Compl. Ex. 1, at App. # 4.) He stated that "[a]ll the actions described in the hundreds of memoranda resulted in the creation of an environment which precludes my promotion, cuts short my career, makes the working atmosphere unpleasant and threatening." (Compl. Ex. 1 at Appendix # 12.)

Hostile work environment claims more frequently accompany Title VII gender, race or national origin discrimination than retaliation claims. Nevertheless, there is little reason that a claim of hostile work environment should not be considered in

cases of retaliation as well. In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court adopted the standard for hostile work environment used in the race discrimination context for use in the gender discrimination context. That standard is applicable in the retaliation context as well.

In *Meritor*, the Court established that a hostile work environment exists when "discriminatory intimidation, ridicule and insult" is "sufficiently severe or pervasive 'to alter the conditions of . . . employment and create an abusive working environment.'" *Id.* The Court expanded its definition in *Harris v. Forklift Systems*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), holding that a hostile work environment claim can be established without necessarily showing that the victim has suffered a tangible injury. The Court provided a series of factors that should be considered:

> [W]e can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris*, 510 U.S. at 23, 114 S.Ct. 367.

Under these factors, plaintiff has failed to establish a prima facie case of hostile work environment. Plaintiff's many EEOC complaints alleging harassment in his work environment may have described unpleasant events. Most of the alleged

incidents, while unpleasant, amounted to little more than everyday workplace disputes. Taken together, these complaints do not show events that were so severe or pervasive that they altered his employment conditions and created an abusive working environment. Accordingly, plaintiff's hostile work environment claim must fail.[6]

## CONCLUSION

Plaintiff's motion to amend, which requests that I join seven additional incidents of alleged retaliation to the complaint, will be granted. The original complaint's factual allegations, when viewed in the light most favorable to plaintiff, do not establish a prima facie case of retaliation for his EEO activity as to any of his claims, except those claims concerning promotion denials, because he failed to allege sufficiently adverse employment actions. In addition, plaintiff has failed to establish that these incidents, even when taken together, constituted a hostile work environment. Accordingly, defendants' motion for summary judgment as to these claims will be granted.

Plaintiff has, however, established a prima facie case of retaliation with respect to his two promotion denials in 1994. Because defendants have not specifically rebutted this claim with a legitimate, non-discriminatory reason for their actions, defendants' motion for summary judgment as to plaintiff's claim regarding his promotion denials will be denied. An appropriate Order accompanies this Opinion.

## *ORDER*

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that plaintiff's Motion # 10 to Consolidate (or to Amend) [61] be, and hereby is, GRANTED. It is further

ORDERED that defendants' Motion for Summary Judgment [9] be, and hereby is, GRANTED IN PART and DENIED IN PART. It is further

ORDERED that any dispositive motion that defendants may wish to file concerning the incidents newly added to the complaint shall be filed within 30 days of the signing of this Order.

---

6. Plaintiff also alleged that he has been constructively discharged as a result of the harassment. Plaintiff is still employed by the VOA Russian Branch Management, though, and therefore cannot maintain a claim of constructive discharge.