Niame KEYS, et al., Plaintiff,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

No. CIV.01–2619(RJL).

United States District Court, District of Columbia.

April 27, 2005.

Corliss Vaughn Adams, Bell & Adams, Robert L. Bell, Bell Law Firm, Washington, DC, for Plaintiff.

Jay R. Goldman, Janice Lynn Cole, Washington Metropolitan Area Transit Authority, Office of General Counsel, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

The plaintiffs, Niame Keys and Sherri Sims, are employed by Washington Metropolitan Area Transit Authority ("WMATA") as mechanics, and they allege that WMATA has subjected them to a policy and practice of discouraging and abusing women who function as mechanics. They argue that this policy violates the D.C. Human Rights Act and Title VII, and that the violations have altered their working conditions in violation of § 1981. Moreover, they allege that the discriminatory conduct by WMATA's employees was intentional and severe enough to entitle them to relief for intentional infliction of emotional distress.

Before this Court are two dispositive motions filed by WMATA. The first is a motion to dismiss the § 1981 claims, the D.C. Human Rights Act claims, the intentional infliction of emotional distress claims, and any claims for punitive damages. The second motion is one for summary judgment on the remaining theories, including gender discrimination, hostile work environment, and retaliation in violation of Title VII. For the following reasons, the Court GRANTS the Motion to Dismiss, and GRANTS IN PART AND DENIES IN PART the Motion for Summary Judgment.

### MOTION TO DISMISS

To succeed on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendant must persuade the

Court that the plaintiffs have failed to allege sufficient facts to state a claim upon which relief could be granted. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, this Court must construe the factual allegations in favor of the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90, *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the defendant can show that there is no set of facts on which the plaintiffs could recover, the motion must be granted. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

 In their opposition to WMATA's motion to dismiss, plaintiffs conceded that they could not state a claim pursuant to either the D.C. Human Rights Act or § 1981, effectively leaving only the intentional infliction of emotional distress ("IIED") claim. In order to state a claim against a corporation for the intentional torts committed by its employees, the plaintiffs must establish the corporation's liability under the theory of *respondeat superior*. A corporation is only liable for the torts of its employees if those acts are committed within the scope of their employment. *Penn Central Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C.1979). "The mere existence of the master and servant relationship is not enough to impose liability on the master." *Id.* Accordingly, plaintiffs must plead facts, which, if true, demonstrate that the alleged conduct of WMATA's employees was an outgrowth of their work assignments, or an integral part of their business activities, interests, or objectives, thereby establishing WMATA's liability for its employees' conduct. *Id.* at 31–32. They have not done so here.

Indeed, in their opposition to the motion to dismiss, plaintiffs admit that the alleged physical assault and other incidents of harassment "were by no means within the scope of the official duties of WMATA employees." Opp'n at 3. Thus, plaintiffs have failed to state a claim for IIED against WMATA and Count IV is dismissed.[1]

## MOTION FOR SUMMARY JUDGMENT

In order to prevail on summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party may rely on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to show that there is no genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat a summary judgment motion, the non-moving party may not rely solely on allegations or conclusory statements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the non-moving party must present evidence that creates a genuine issue as to any material fact. *Id.* In considering the motion, the Court must draw all justifiable inferences in the non-moving party's favor. *Id.* at 255, 106 S.Ct. 2505.

## A. Timeliness of Gender Discrimination and Hostile Work Environment Claims

 Title VII makes it unlawful "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because

---

1. Because of its ruling on the IIED claim, the Court will not address the punitive damages issues raised in the motion to dismiss.

of such individual's...sex...." 42 U.S.C. § 2000e–2(a)(1). The plaintiffs allege that WMATA violated Title VII because it carried out a policy and practice of discriminating against women by subjecting them to gender discrimination, a hostile work environment, and retaliation. 2nd Am. Compl. ¶¶ 67–68, 71. Before filing a suit under Title VII, however, a plaintiff must exhaust her administrative remedies by filing a complaint with the EEOC regarding the alleged discriminatory actions. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir.1995). Here, the plaintiffs' claims are partially based on conduct that allegedly occurred outside of the 180–day limitations period. Because this Court has authority to consider only those actions that were administratively exhausted, *id.*, it must first determine which of the alleged actions can form a basis of the plaintiffs' Title VII claims. The Court will review separately each of plaintiffs' claims.

### 1. Sims' Allegations of Hostile Work Environment and Sexual Harassment are Time Barred

The EEOC complaint filed by Sims on December 22, 2000, contains several allegations: (1) sexual harassment by Mr. Thompson; (2) unfavorable job assignments; (3) failure to thoroughly investigate complaints; and (4) unnecessary written disciplinary reports. Pl.Ex. C, at 458–59. WMATA argues that the gender discrimination and hostile work environment claims raised by Sims in this action should be dismissed as untimely because her EEOC complaint contains no allegations of any sexual harassment by Mr. Thompson that occurred within 180 days of the EEOC complaint. Mot. Summ. J. at 9. The Court agrees and grants summary

judgment for the defendant on Sims' gender discrimination and hostile work environment claims, which are based on the alleged sexual harassment imposed upon her by Mr. Thompson.

In a Title VII action, Sims can properly challenge only those allegations that were contained in an EEOC complaint, or are "like or reasonably related to the allegations of the charge and grow[ ] out of such allegations." *Park*, 71 F.3d at 907 (internal quotation marks omitted). Any allegation in an EEOC complaint, however, is time-barred if it is not filed within 180 days of the employment practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Although Sims' affidavit in support of her EEOC complaint alleges harassment by Mr. Thompson beginning as early as 1990, the latest allegation made by her concerning Mr. Thompson's sexual harassment occurred in April 2000. Pl.Ex. C, at 458–59. Sims filed her EEOC complaint alleging sexual harassment on December 22, 2000. Def. Stmt. Facts ¶ 13. Even if the April 2000 incident occurred on the last day of the month, more than 180 days had elapsed before Sims filed her complaint. Therefore, her claims based on sexual harassment are untimely.[2] Accordingly, the gender discrimination claims in Count I and the hostile work environment claims in Count II are dismissed as to Sims.

### 2. Keys' Discrimination and Retaliation Claims Based on Discrete Acts are Untimely

The EEOC complaint filed by Keys on November 22, 2000, and amended on January 2, 2001, contains allegations of: (1) retaliation; (2) harassment; (3) unlawful reassignment; (4) undesirable work as-

---

**2.** The Court also notes that the EEOC found that Sims' "sexual harassment claim [was] untimely...." Def. Ex. 17.

signments; and (5) hostile work environment. Pl.Ex. C, at 304–05. WMATA similarly argues that Keys is unable to pursue discrimination and retaliation claims on the basis of actions that were not timely pursued. The Court agrees for the following reasons.

■■ First, because Keys did not bring a suit after receiving a right to sue letter following her August 2, 1996 EEOC complaint, she has waived any sex, race, religious discrimination, and retaliation claims that occurred prior to August 1996. Indeed, it is well established that a failure to file suit within 90 days after receiving a right to sue letter is grounds for dismissal. *Josiah–Faeduwor v. Communications Satellite Corp.*, 785 F.2d 344, 345 (D.C.Cir. 1986). Thus, since Keys did not file an action based on her August 1996 EEOC complaint, she has waived her right to recover for any retaliation claims and any discrimination claims based on the *discrete acts* that occurred prior to August 1996.

Similarly, Keys has waived her right to file any retaliation claims for any incidents prior to June 29, 1999, the day she filed her EEOC complaint alleging retaliation. Pl.Ex. C, at 274. There is no evidence in the record to demonstrate that Keys filed a civil action after receiving her right to sue notice on September 17, 1999. Since Keys did not file an action within 90 days of receiving the right to sue letter, she waived any claims for incidents of retaliation that occurred prior to June 29, 1999.[3]

### 3. Keys' Gender Discrimination and Hostile Work Environment Claims are Timely

■ Keys' claims for gender discrimination and hostile work environment under Title VII are based on the allegation that WMATA had a policy of discouraging and abusing woman who worked as mechanics. Indeed, gender discrimination "includes creating a hostile or abusive work environment if the harassment is sufficiently abusive to affect a 'term, condition, or privilege' of employment." *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122 (D.C.Cir.2002) (citation omitted). Since Keys' gender discrimination claims are, in essence, based on her hostile work environment allegation, the Court must determine whether she timely raised these allegations in her EEOC complaint and, if so, which actions may be considered by the Court in determining liability.

In her EEOC complaint, as amended on January 2, 2001, Keys alleged that she was "subjected to a hostile work environment due to the harassment by supervisors...." Pl.Ex. C, at 304–05. In support of this allegation, Keys identifies several discrete acts that contributed to the hostile work environment. *Id.* WMATA contends that Keys' attempt to cobble together discrete acts of discrimination and retaliation that occurred both prior to and after the date of her original complaint are legally insufficient to state a hostile work environment claim. The Court disagrees.

■ A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R.*, 536 U.S. at 117, 122 S.Ct. 2061. The Supreme Court has held that the term "practice" applies to both discrete acts and single occurrences, each starting a new clock

---

3. WMATA also argues that Keys' discrimination claims arising out of her 1996 and 1999 charges are untimely because she did not file an individual action following the *Bansal* action. Because the Court has determined that Keys waived any discrimination claims based on discrete acts alleged in the 1996 and 1999 EEOC complaint, it need not address this argument.

for filing charges with the EEOC. *Id.* at 112, 122 S.Ct. 2061. Indeed, where discrete acts of discrimination are separately actionable "unlawful employment practice[s]," *id.* at 114, 122 S.Ct. 2061, a hostile work environment claim is "based on the cumulative effect of individual acts," *id.* at 115, 122 S.Ct. 2061. Accordingly, if Keys' EEOC complaint, as amended, alleges any act "contributing to the claim" that occurred within the 180–day limitations period, "the entire time period of the hostile environment may be considered by a Court for the purposes of determining liability." *Id.* at 117, 122 S.Ct. 2061. Here, in her EEOC complaint, Keys made allegations supporting her hostile work environment claim that occurred within the required 180 days, therefore making her hostile work environment claim timely. Accordingly, the Court denies WMATA's motion for summary judgment as to Keys' gender discrimination and hostile work environment claims.

## B. Keys' and Sims' Retaliation Claims

 To state a claim for retaliation under Title VII, a plaintiff must show that: (1) she was engaged in a protected activity; (2) there was an adverse personnel action; and (3) there was a causal connection between the protected activity and the personnel action. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C.Cir.2003). Neither Keys, nor Sims, have met these requirements.

 In her November 22, 2000 EEOC complaint, as amended on January 2, 2001, Keys alleged that her supervisor "ha-

rassed" her because she had complained of harassment in the past. Pl.Ex. C, at 304–05. These allegedly retaliatory acts of harassment included Keys reassignment to a different shop and the requirement that she work on an undesirable project. *Id.* Assuming *arguendo* that Keys' allegations of retaliation for complaining about the harassment she was allegedly experiencing rise to the level of actionable personnel decisions, Keys still must demonstrate a causal connection between the protected activity (i.e., complaints about harassment) and the alleged retaliation. She has failed to do so here. Seventeen months elapsed between Keys' protected activity in 1999 and her reassignment to the Motor Shop in June 2000. Keys Affidavit ¶ 4 (showing no activity between filing her EEOC complaint and the reassignment). There is no evidence in the record to establish, or even infer,[4] the existence of a causal connection between Keys protected activity and her reassignment over a year later. Moreover, there is no evidence in the record to demonstrate that Keys was assigned to an undesirable project in retaliation for her protected activity. Accordingly, WMATA is granted summary judgment as to Keys' retaliation portion of Count II because there is insufficient evidence of a causal connection between her protected activity and the retaliation she alleges.

 Finally, with regard to Sims, in her EEOC complaint she alleged that her supervisor retaliated against her by issuing unnecessary written disciplinary reports. Pl.Ex. C, at 458–59. While adverse personnel decisions are actionable if

---

4. Absent direct evidence establishing the causal connection, "[a] causal connection may be inferred by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Brodetski v. Duffey*, 141 F.Supp.2d 35, 42 (D.D.C. 2001) (internal quotation marks omitted).

But, a reliance on temporal proximity requires that the plaintiff demonstrate that only a *short* period of time elapsed between the protected activity and the adverse action. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

they "constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," *Burlington Industs., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), our Circuit has held that formal criticism or poor performance evaluations are not adverse personnel actions, *Brown v. Brody,* 199 F.3d 446, 458 (D.C.Cir.1999). Moreover, "an employment decision does not rise to the level of an actionable adverse action, . . . unless there is a tangible change in duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA,* 102 F.Supp.2d 24, 29 (D.D.C. 2000). Since Sims has failed to demonstrate any tangible change in her duties or working conditions as a result of this alleged retaliation, WMATA's motion for summary judgment as to her allegations of retaliation is granted.

### *ORDER*

For the reasons set forth above, it is this 27th day of April, 2005 hereby

**ORDERED** that the Defendant's Motion to Dismiss Parts of Counts I and II, All of Counts III and IV, and Any Claim for Punitive Damages of the Second Amended Complaint of Joint Plaintiffs Keys and Sims [# 14] is **GRANTED**, and it is further

**ORDERED** that the Defendant's Motion for Summary Judgment [# 57] is **GRANTED IN PART AND DENIED IN PART,** and it is further

**ORDERED** that the parties shall appear for a Status Conference on May 12th, 2005, at 3:00,

**SO ORDERED.**